HOANG, Appellee,

v.

E*TRADE GROUP, INC. et al., Appellants.

[Cite as *Hoang v. E*Trade Group, Inc.,* 151 Ohio App.3d 363, 2003-Ohio-301.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 81425.

Decided Jan. 23, 2003.

---

5. The statement in R.C. 2943.031 can also provide a basis for a translation, if one is needed.

Webster & Webster, David B. Webster, Beth Brandon Webster and Craig P. Kvale, for appellee.

Taft, Stettinius & Hollister and Mark J. Valponi; Brobeck, Phleger & Harrison, Francis S. Chlapowski, Nicole M. Hunn and Gregory A. Markel, for appellants.

---

COLLEEN CONWAY COONEY, Judge.

{¶ 1}   Defendant-appellant E*Trade Group, Inc. appeals the common pleas court's granting of plaintiff-appellee Truc Q. Hoang's Civ.R. 23 motion for class certification.   After a thorough review of the record and a complete analysis of the applicable law, we conclude that the trial court abused its discretion in granting the class certification.   We, therefore, reverse the judgment and remand this case for further proceedings.

{¶ 2}   E*Trade Group, Inc. ("E*Trade") is a California company and provider of online investing services.   It offers customers automated securities order placement and execution in conjunction with a number of other products and services, such as portfolio tracking, stock quotes, news, and information. E*Trade customers can access its services using a variety of means, including the Internet, direct modem access, Internet service providers, and touch-tone telephone, or by calling a toll-free telephone number and speaking with and placing orders through a live representative.

{¶ 3}   On November 23, 1998, Truc Q. Hoang ("Hoang") executed an online account application to open a new E*Trade account, which she then mailed to E*Trade.   Once an account is opened and funded, customers may begin buying and selling securities through E*Trade.   When E*Trade receives a customer's order, E*Trade routes the order to the marketplace for execution, sends a written confirmation by mail, and a monthly statement that details all transactions and activity in that customer's brokerage account.

{¶ 4}   Directly above Hoang's signature on her account application, Hoang acknowledged that she "received, read, and agree[d] to be bound by the terms and conditions as currently set forth in the E*Trade Customer Agreement." E*Trade also subsequently mailed a hard copy of the Customer Agreement to Hoang.

{¶ 5}   The Customer Agreement, which Hoang acknowledged she had read and to which she agreed, stated that E*Trade is not liable for damages resulting from loss of use of its online service or for losses resulting from a cause over which it does not have direct control, including electronic or mechanical equipment failure.   It also stated that E*Trade is not liable for losses caused directly or indirectly by computer or telephone failure, that order execution may be delayed, that orders may be executed at prices different from the price quoted when the order is placed, and that it would rarely be possible to cancel a market order during market hours.

{¶ 6}   In her amended complaint, Hoang asserted that E*Trade entered into a "written agreement" with its customers in which E*Trade allegedly promised "to provide continuous and/or reliable trading services."   She alleged that E*Trade advertised online securities trading as "reliable, convenient, fast and efficient" and that securities "trades could typically be 'executed and electronically confirmed in seconds.'"   She also alleged that E*Trade "proclaimed that its systems were 'state of the art,' [and] that it had 'superior technology.'"   Finally, Hoang alleged that E*Trade advertised that "customers could place orders via the Internet or telephone 24 hours a day."

{¶ 7}   Hoang claimed that these representations and promises gave rise to her claims for breach of contract, fraud, breach of fiduciary duty, and violation of Ohio's consumer protection laws, because E*Trade allegedly failed to provide her with the service it promised.   She alleged that E*Trade's system experienced various interruptions and that E*Trade customers could not access their accounts for "75 minutes" on February 3, for "two hours" on February 4, and for "29 minutes" on February 5, 1999.   E*Trade's computer system experienced other similar but limited interruptions on March 19, July 9, August 10, and November 23 through December 3, 1999, and January 25, March 2, April 3, May 3, and October 18, 2000.

{¶ 8} Notwithstanding the above-noted disclaimers in the Customer Agreement, Hoang alleged that as a result of these system interruptions, she and other E*Trade customers could not execute securities transactions, that execution of orders they placed were delayed, and that she and others were damaged by these interruptions. Accordingly, she moved to certify a class of all Ohio residents who had a trading account with E*Trade on the dates when E*Trade's system experienced interruptions.

{¶ 9} After a hearing, the trial court granted Hoang's motion and thereby certified a class consisting of all Ohio residents who had a trading account with E*Trade on the following dates: November 27 and 30, 1998; February 3 through 5, 1999; March 19, 1999; July 9, 1999; August 10, 1999; November 23 through December 3, 1999; January 25, 2000; April 3, 2000; May 3 2000; and October 18, 2000.

{¶ 10} On appeal, E*Trade argues in a single assignment of error that the trial court erred in certifying this case as a class action. In *Hamilton v. Ohio Sav. Bank* (1998), 82 Ohio St.3d 67, 70, 694 N.E.2d 442, the Ohio Supreme Court stated the standard of review for decisions to certify a class action, as follows:

{¶ 11} " 'A trial judge has broad discretion in determining whether a class action may be maintained and that determination will not be disturbed absent a showing of an abuse of discretion.' * * * However, the trial court's discretion in deciding whether to certify a class action is not unlimited, and indeed is bounded by and must be exercised within the framework of Civ.R. 23. The trial court is required to carefully apply the class action requirements and conduct a rigorous analysis into whether the prerequisites of Civ.R. 23 have been satisfied." Quoting *Marks v. C.P. Chem. Co., Inc.* (1987), 31 Ohio St.3d 200, 31 OBR 398, 509 N.E.2d 1249, syllabus.

{¶ 12} Civ.R. 23 sets forth seven requirements that must be satisfied before a case may be maintained as a class action. Those requirements are as follows: (1) an identifiable class must exist and the definition of the class must be unambiguous; (2) the named representatives must be members of the class; (3) the class must be so numerous that joinder of all members is impracticable; (4) there must be questions of law or fact common to the class; (5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and (7) one of the three Civ.R. 23(B) requirements must be satisfied. *Hamilton v. Ohio Sav. Bank*, 82 Ohio St.3d at 79, 694 N.E.2d 442.

{¶ 13} In an action for damages, the trial court must specifically find, pursuant to Civ.R. 23(B), that questions of law or fact common to the members of the class predominate over any questions affecting only individual members and

that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Id.

{¶ 14} The party seeking to maintain a class action has the burden of demonstrating that all factual and legal prerequisites to class certification have been met. *Gannon v. Cleveland* (1984), 13 Ohio App.3d 334, 335, 13 OBR 412, 469 N.E.2d 1045. A class action may be certified only if the court finds, after a rigorous analysis, that the moving party has satisfied all the requirements of Civ.R. 23. See *Hamilton,* 82 Ohio St.3d at 70, 694 N.E.2d 442.

{¶ 15} E*Trade argues that while Hoang can establish most of the Civ.R. 23 prerequisites, Hoang cannot demonstrate that questions of law or fact common to the members of the class predominate over questions affecting only individual members, or that a class action is superior to other available methods for the fair and efficient adjudication of their claims. E*Trade also argues that Hoang's claims are not typical of the claims other members of the putative class may have against E*Trade. Finally, E*Trade argues that Hoang cannot establish the requirements necessary to maintain a class action under the Ohio Consumer Sales Practices Act.

### Predominance

{¶ 16} Performing a "rigorous analysis" of the Civ.R. 23(B)(3) predominance requirement necessitates an examination of "common" versus "individual" issues. A predominance inquiry is far more demanding than the Civ.R. 23(A) commonality requirement and focuses on the legal or factual questions that qualify each class member's case as a genuine controversy. *Williams v. Countrywide Home Loans, Inc.,* 6th Dist. No. L–01–1473, 2002-Ohio-5499, 2002 WL 31270283 (citing *Jackson v. Motel 6 Multipurpose, Inc.* [C.A.11, 1997], 130 F.3d 999, 1005). Therefore, in determining whether common questions of law or fact predominate over individual issues, "it is not sufficient that common questions merely exist; rather, the common questions must represent a significant aspect of the case and they must be able to be resolved for all members of the class in a single adjudication." *Schmidt v. Avco Corp.* (1984), 15 Ohio St.3d 310, 313, 15 OBR 439, 473 N.E.2d 822.

{¶ 17} In finding that the predominance requirement was met, the trial court stated in its opinion:

{¶ 18} "First, one of the bases for E*Trade's liability is the existence of a standard, uniform customer agreement. Second, E*Trade's actions in this case are actions directed toward, or having impact upon, all plaintiffs in this case. There are no individual contracts or questions involving E*Trade's actions toward any specific individuals that would fracture the class. The predominance prereq-

uisite is satisfied because the singular contention of each and every plaintiff is that E*Trade engaged in a common course of conduct which had a single objective, explosive growth, thereby resulting in a negative impact on existing customers. Each plaintiff within the class asserts the same claims against E*Trade, grounded on the same facts."

{¶ 19} The trial court seems to have applied the requirements necessary for a finding of commonality under Civ.R. 23(A) to the predominance requirement of Civ.R. 23(B). Although all of the plaintiffs' claims arise out of the same Customer Agreement and a "common course of conduct," the trial court ignores the fact that liability as to each individual plaintiff's claims cannot be established in a single adjudication. Each of the plaintiff's claims requires proof of actual injury caused by the alleged wrongdoing before liability can be established. *Rasnick v. Tubbs* (1998), 126 Ohio App.3d 431, 710 N.E.2d 750 (damages may not be awarded for a breach of contract in the absence of actual economic injuries)[1]; *Watkins v. Cleveland Clinic Found.* (1998), 130 Ohio App.3d 262, 278, 719 N.E.2d 1052 (to prevail on a claim for fraud, claimant must prove injury proximately caused by fraud); *Strock v. Pressnell* (1988), 38 Ohio St.3d 207, 527 N.E.2d 1235 (to prevail on claims of negligence and breach of fiduciary duty, claimant must prove actual injury resulting therefrom).

{¶ 20} Hoang argues that nominal damages are recoverable for all of the plaintiffs' claims, except negligence. We disagree. Although nominal damages may substitute for proof of the amount of damages in certain cases, it cannot substitute for proof of injury. Class certification cases distinguish between the amount of damages, the calculation of which will not ordinarily defeat class certification, and the fact of injury and causation, which are liability elements of a claim. As the court held in *Martino v. McDonald's Sys., Inc.* (N.D.Ill.1980), 86 F.R.D. 145, 147:

{¶ 21} "[T]he fact of damage question is distinct from the issue of actual damages. Fact of damage pertains to the existence of injury, as a predicate to liability; actual damages involve the quantum of injury, and relate to the appropriate measure of individual relief. Although actual damages typically require the courts to become involved in individual calculations of damages, this has been held to be an insufficient basis for denying class certification where the common issues relevant to liability can be established on a classwide basis. * * * Class treatment of fact of damage issues, however, presumes the ability to prove

---

1. The rule in California is similar in that injury is an element of a breach-of-contract claim. *Cochran v. Cochran* (1997), 56 Cal.App.4th 1115, 66 Cal.Rptr.2d 337, 342, fn. 6. Pursuant to the choice-of-law provision in the parties' Customer Agreement, California law applies to Hoang's customer agreement with E*Trade.

fact of damage without becoming enmeshed in individual questions of actual damage. * * * Where proof of fact of damage requires evidence concerning individual class members, the common questions of fact become subordinate to the individual issues, thereby rendering class certification problematic."

{¶ 22} In *In re Merrill Lynch Sec. Litigation* (D.N.J.1999), 191 F.R.D. 391, 396, affirmed sub nom. *Newton v. Merrill Lynch, Pierce, Fenner & Smith* (C.A.3, 2001), 259 F.3d 154, 188, the court held that absent proof of classwide pecuniary loss, class certification is inappropriate. In that case, plaintiffs were investors who purchased NASDAQ stocks during the class period. Defendants were brokers who accepted orders from customers and executed them at the National Best Bid and Offer ("NBBO") price. The brokers had represented that they would execute orders to maximize their customers' economic benefit. The plaintiffs brought an action alleging securities fraud against the brokers, claiming they could have obtained better prices than the NBBO price but failed to do so.

{¶ 23} The plaintiffs then filed a motion for class certification. While some of the plaintiffs suffered damages, others did not. The court denied the motion for class certification, explaining:

{¶ 24} "[A]bsent proof of classwide pecuniary loss * * * there can be no classwide claim for securities fraud. * * * Implicit in Rule 23's requirements is a showing that those persons sought to be included in the class have all suffered some harm to which common questions of law or fact apply. * * * In order to show injury, a class member would have to establish that, at the time when he or she purchased or sold securities, a better price was available through one of the alternative sources but was not obtained, resulting in pecuniary loss to the class member. If the NBBO price was, in fact, the best price available at the time the securities were purchased or sold, then the class member has suffered no loss whatsoever and has no claim for securities fraud. The question of damages is further individualized because 'other terms in addition to price are also relevant to best execution.' * * * Thus, even if this action could be bifurcated into liability and damages phases, establishing liability would require a fact-specific inquiry into the details of every individual transaction."[2] Id. at 397. Similarly, in the instant case, some of the plaintiffs have suffered damages as a result of E*Trade's system interruptions while others have not. Some E*Trade customers may not have been trading during any of the system interruptions, in which case they were not injured and have no claims. Customers that were trading may not have suffered any losses as a result of a system interruption, in which

---

2. Hoang cites a number of cases for the proposition that "common, classwide injury" is not essential to a finding of predominance for purposes of class certification. However, we find these cases distinguishable.

case they have no claims. The trading of customers who were affected by the system interruptions would have to be analyzed on a "trade by trade" basis to determine what price the customer might have obtained had the system interruption not occurred.

{¶ 25} This analysis is complex because it requires consideration of each individual transaction, other transactions in the same security that occurred in the market, and the market conditions at the time, including the number of orders waiting to be executed in the market, the size and type of those orders, and other factors. Further, some customers who were affected by the system interruptions may have actually benefited from the interruption, in which case they have no claims.

{¶ 26} It should be noted that Hoang argues that class certification is appropriate because each plaintiff's damages may be ascertained by a mathematical formula. E*Trade contends that the only expert in this case testified that it is impossible to determine individual plaintiff's damages with use of a simple mathematical formula. Whether a mathematical formula could be used to calculate individual damages is irrelevant because the need to calculate damages individually, by itself, is not a reason to deny class certification. We find that class certification is inappropriate in this case because liability as to each individual plaintiff's claims cannot be ascertained on a classwide basis in a single adjudication.

{¶ 27} Hoang also argues that all E*Trade customers were injured during an E*Trade system interruption, even if they were not trading during the interruptions. Specifically, Hoang claims that all E*Trade customers were injured simply because they could not access their E*Trade accounts during those times. However, the law does not provide a recovery for inchoate claims. *Pappas Realty Co. v. Wharton* (July 11, 1984), 9th Dist. Nos. 11222, 11223 and 11233, 1984 WL 5175 (plaintiff may not recover for breach of contract absent proof of actual economic injury). Therefore, simple loss of services without economic loss does not create a compensable claim.

{¶ 28} Accordingly, we conclude that because the issues relating to liability with respect to each individual plaintiff's claims make it impossible to prove or disprove the claims of all the members of the class on a simultaneous, classwide basis, class certification is inappropriate. Having found that the predominance requirement has not been met, we need not address E*Trade's other arguments with respect to the typicality and superiority requirements.

### Consumer Sales Practices Act

{¶ 29} Hoang argues, in the alternative, that this case should be certified as a class action pursuant to R.C. 1345.09, the Ohio Consumer Sales Practices Act ("CSPA"), which provides:

{¶ 30} "For a violation of Chapter 1345. of the Revised Code, a consumer has a cause of action and is entitled to relief as follows:

{¶ 31} "* * *

{¶ 32} "(B) Where the violation was an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 of the Revised Code before the consumer transaction on which the action is based, or an act or practice determined by a court of this state to violate section 1345.02 or 1345.03 of the Revised Code and committed after the decision containing the determination has been made available for public inspection under division (A)(3) of section 1345.05 of the Revised Code, the consumer may rescind the transaction or recover, but not in a class action, three times the amount of his actual damages or two hundred dollars, whichever is greater, or recover damages or other appropriate relief *in a class action under Civil Rule 23*, as amended." (Emphasis added.)

{¶ 33} Hoang claims, citing *Brown v. Lyons* (C.P.1974), 43 Ohio Misc. 14, 19–21, 72 O.O.2d 216, 332 N.E.2d 380, that E*Trade's activities have been condemned by various courts. However, *Brown v. Lyons*, the only case Hoang cites, involved alleged misrepresentations relating to home appliances. Home appliances are consumer goods as defined by the Ohio CSPA. See R.C. 1345.01. The instant case does not involve the sale of consumer goods but rather involves the provision of online brokerage services. Ohio Adm.Code 109:4–3–01(C) excludes securities from the definition of "goods" and specifically limits the definition of "services" to the "performance of labor for the benefit of another." Although the term "labor" is not defined, the common ordinary meaning of the word "labor" implies work performed with some physical exertion. Services provided electronically do not require any physical exertion and therefore do not require any "labor." Hoang has not identified, nor have we found, any other cases declaring E*Trade's alleged practices a violation of R.C. 1345.02 or 1345.03.

{¶ 34} Moreover, R.C. 1345.09 states that in order to proceed as a class action under the CSPA, the representative plaintiff must meet all the requirements of Civ.R. 23. Because Hoang cannot establish all the requirements for class certification under Civ.R. 23, class certification is also inappropriate under R.C. 1345.09. Therefore, we sustain E*Trade's sole assignment of error and reverse and remand this case to the trial court for further proceedings consistent with this opinion.

{¶ 35} The judgment is reversed, and the cause is remanded to the lower court for further proceedings consistent with this opinion.

Judgment accordingly.

KENNETH A. ROCCO, A.J., and MICHAEL J. CORRIGAN, J., concur.