JOURNAL ENTRY and OPINION
{¶ 1} Defendants-appellants Roto-Rooter, Inc., Roto-Rooter Services Company, Inc., Roto-Rooter Management Company, Roto-Rooter Corporation and Chemed Corporation (collectively referred to as "Roto-Rooter") appeal the trial court's decision granting plaintiff-appellee Michael Linn's ("Linn") motion for class certification. Finding merit to this appeal, we reverse.
 {¶ 2} Roto-Rooter is a national company headquartered in Cincinnati with 58 branch offices in 35 states, employing over 1,500 service technicians. It provides drain cleaning and plumbing services to residential, commercial, and industrial customers. Prior to performing any work, Roto-Rooter provided a written estimate to its customers. The services offered varied considerably in price, depending on the nature of the work requested.[1] In 1999, Roto-Rooter instituted the practice of including a preprinted "miscellaneous supplies charge" on all of its customer invoices. The charge started at $4.95, increased to $6.95, and ultimately went as high as $12.95, depending on the geographic location.
 {¶ 3} Linn, a resident of Ohio, called Roto-Rooter for its plumbing services twice in September 2000. He paid a miscellaneous supplies charge of $4.95 on the first visit and $6.95 on the second, both of which were included in Roto-Rooter's preprinted invoices.
 {¶ 4} The purpose of the miscellaneous supplies charge is disputed between the parties. Roto-Rooter contends that the charge is to cover hundreds of miscellaneous supplies routinely used in its services, such as drain cleaning, leak detecting, and video monitoring machines, cables, blades, safety equipment, fuel, cleaning products, small parts, hand tools, and consumables (i.e., solder, flux, caulk, tape, torch fuel, nuts, bolts, washers, and cleaning products). The types of supplies and the amounts used varied, depending on the geographic region and the work that was being done. Roto-Rooter claims it did not track the amount of consumables used on individual service calls because it could not be precisely measured or priced. Roto-Rooter did, however, track the aggregate cost for these supplies.
 {¶ 5} In contrast, Linn argues that the charge was implemented to boost Roto-Rooter's profits and to increase the pay of its technicians. Linn claims that Roto-Rooter required payment of the miscellaneous supplies charge regardless of whether any miscellaneous supplies were used and that the charge bore no relation to the cost of such supplies. Linn also contends that the invoices did not reveal the nature of the charge and that customers were misled to believe the charge was related to supplies used in a service call.
 {¶ 6} On April 5, 2002, Linn filed a class action suit against Roto-Rooter, asserting claims for fraudulent misrepresentation, fraudulent concealment, unjust enrichment, and violations of the Ohio Consumer Sales Practice Act ("CSPA"). Discovery was exchanged between the parties, limited to the sole issue of class certification. Subsequently, Linn moved for certification of a nationwide class consisting of customers involved in more than 2.3 million transactions occurring in 35 states. After a hearing, the trial court granted the motion and certified the following class:
"All persons and entities who reside in Alabama, Arkansas,California, Colorado, Connecticut, Delaware, Florida, Georgia,Hawaii, Illinois, Indiana, Louisiana, Maine, Maryland,Massachusetts, Michigan, Minnesota, Mississippi, Missouri,Nebraska, New Hampshire, New Jersey, New Mexico, New York,Nevada, North Carolina, Ohio, Pennsylvania, Rhode Island, SouthCarolina, Tennessee, Texas, Virginia, Washington, or WestVirginia and who were charged a miscellaneous supplies charge inconnection with services by a Roto-Rooter company-owned storeduring the period of October, 1999 through July 1, 2002."
 {¶ 7} Roto-Rooter appeals, raising seven assignments of error.
 Class Certification {¶ 8} In Hamilton v. Ohio Savings Bank (1998),82 Ohio St.3d 67, 69, the Ohio Supreme Court stated the standard of review for decisions to certify a class action, as follows:
"A trial judge has broad discretion in determining whether aclass action may be maintained and that determination will not bedisturbed absent a showing of an abuse of discretion * * *However, the trial court's discretion in deciding whether tocertify a class action is not unlimited, and indeed is bounded byand must be exercised within the framework of Civ.R. 23. Thetrial court is required to carefully apply the class actionrequirements and conduct a rigorous analysis into whether theprerequisites of Civ.R. 23 have been satisfied."
 {¶ 9} Civ.R. 23 sets forth seven requirements that must be satisfied before a case may be maintained as a class action. Those requirements are as follows: (1) an identifiable class must exist and the definition of the class must be unambiguous, (2) the named representatives must be members of the class, (3) the class must be so numerous that joinder of all members is impracticable, (4) there must be questions of law or fact common to the class, (5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class, (6) the representative parties must fairly and adequately protect the interests of the class, and (7) one of the three Civ.R. 23(B) requirements must be satisfied. Hamilton v. Ohio Savings Bank
(1998), 82 Ohio St.3d 67, 79.
 {¶ 10} In an action for damages, the trial court must specifically find, pursuant to Civ.R. 23(B), that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Id.
 {¶ 11} The party seeking to maintain a class action has the burden of demonstrating that all factual and legal prerequisites to class certification have been met. Gannon v. Cleveland
(1984), 13 Ohio App.3d 334, 335. A class action may be certified only if the court finds, after a rigorous analysis, that the moving party has satisfied all the requirements of Civ.R. 23. SeeHamilton, supra at 70.
 {¶ 12} Because we find the second assignment of error dispositive, we shall address it first.
 Predominance {¶ 13} In its second assignment of error, Roto-Rooter argues that the trial court abused its discretion by granting class certification because common questions of fact do not predominate. We agree.
 {¶ 14} Performing a "rigorous analysis" of the Civ.R. 23(B)(3) predominance requirement necessitates an examination of "common" versus "individual" issues. A predominance inquiry is far more demanding than the Civ.R. 23(A) commonality requirement and focuses on the legal or factual questions that qualify each class member's case as a genuine controversy. Williams v.Countrywide Home Loans, Inc., 6th Dist. No. L-01-1473, 2002-Ohio-5499, citing Jackson v. Motel 6 Multipurpose, Inc.
(C.A. 11, 1997), 130 F.3d 999, 1005. Therefore, in determining whether common questions of law or fact predominate over individual issues, "it is not sufficient that common questions merely exist; rather, the common questions must represent a significant aspect of the case and they must be able to be resolved for all members of the class in a single adjudication."Schmidt v. Avco Corp. (1984), 15 Ohio St.3d 310, 313.
 {¶ 15} In finding that common questions of fact predominate over each plaintiff's claim for fraud, unjust enrichment, and violations of the CSPA, the trial court held that factual questions concerning the amount, nature, and value of supplies each customer received and the representations made to each customer were irrelevant. Rather, the trial court reasoned that the claims arose from a single discernable act — the use of a fixed, predetermined charge for miscellaneous supplies regardless of actual supplies used. The trial court further reasoned that the "lawfulness" of this alleged "profit-making scheme" was sufficient for establishing both liability and injury as to all the plaintiffs. We disagree.
 {¶ 16} Contrary to the trial court's holding, we find that the mere allegation of Roto-Rooter's purported "profit-making scheme" does not negate the necessity for establishing the essential elements of each claim. In regard to the claims for unjust enrichment and fraud, each plaintiff must establish actual injury before Roto-Rooter's liability can be determined. See, e.g., Hambleton v. R.G. Barry Corp. (1984), 12 Ohio St.3d 179,183 (claim for unjust enrichment requires proof that defendant received a benefit without compensating plaintiff); Gaines v.Preterm-Cleveland, Inc. (1987), 33 Ohio St.3d 54, 55 (essential element for common-law civil fraud is injury resulting from reliance upon representation or concealment). Indeed, Roto-Rooter's liability hinges on whether a customer actually received little or no miscellaneous supplies to establish that the charge was unjust or fraudulent.
 {¶ 17} Furthermore, while we recognize that the CSPA provides for statutory damages when a violation has occurred, and that it is remedial in nature, we find, nevertheless, that Linn's allegation of Roto-Rooter's purported "profit-making scheme" does not constitute a violation under the CSPA suitable for class certification. Specifically, we find no support under Ohio law that a predetermined fixed charge, disclosed to the customer in advance of the decision to accept goods or services and included within the price, is inherently illegal, deceptive, or fraudulent, regardless of the value of the goods or supplies the customer actually receives. To the contrary, such charges are commonly imposed for such things as use of ATM machines, ticket processing fees, and even basic court costs. Furthermore, courts have found that these charges are lawful, especially considering that the fee is disclosed in advance. See Kelly v. Ford MotorCredit Co. (2000), 137 Ohio App.3d 12 (finding that defendant had no duty to disclose the nature of an acquisition or administration fee included in a vehicle lease agreement and that such fee is not fraudulent or deceitful because it was disclosed prior to any sale agreement).
 {¶ 18} Rather, the issue of whether the alleged "scheme" is actionable is dependent on the existence of other factors specific to each transaction, i.e., amount and value of supplies used, nature of the work performed, and representations made by service technicians. For example, customers who received more in value than the amount of miscellaneous supplies charged would have no claims. Additionally, given the large variance in the jobs performed, i.e., a $75 service call as compared to a $7,500 service call, the amount of miscellaneous supplies used would differ. Moreover, approximately 1,500 service technicians responded to customers' questions, resulting in countless different representations.[2] Absent an individual analysis of these factors, there is no way to determine Roto-Rooter's liability under each of the plaintiff's claims. Because these factors require individualized inquiries, the trial court abused its discretion by finding common questions of fact predominate. See, Hoang v. E*Trade Group, Inc, 151 Ohio App.3d 363,2003-Ohio-301. See, also, Augustus v. Progressive Corp.,
Cuyahoga App. No. 81308, 2003-Ohio-296.
 {¶ 19} In finding that common questions of fact predominate, the trial court concluded that the use of the standardized invoices charging all customers the same miscellaneous supplies fee regardless of the actual supplies used was illegal. However, the cases relied on by the trial court do not support this broad notion that the mere use of a standardized form with a pre-printed fee is the basis for liability alone. See, e.g.,Hamilton, supra (undisputed that class members were charged interest rates other than those disclosed in mortgage loan agreements); Cope v. Metropolitan Life Insurance Co. (1988),82 Ohio St.3d 426 (involved the identical omission of standard disclosure warnings in the written insurance policies of every class member). Rather, these cases recognize that when evidence of a defendant's deceitful or fraudulent conduct is set forth in a standardized contract distributed to many and resulting in class-wide injury, then such a case is ideal for class certification. The crucial difference between those cases and the instant case is that Roto-Rooter's invoice alone does not demonstrate deceit or fraud. Likewise, there is no evidence of class-wide injury.
 {¶ 20} The trial court's reliance on Motzer Dodge Jeep Eaglev. Attorney General (1994), 95 Ohio App.3d 183, for the suitability of class certification, is misplaced. In Motzer, a car dealership charged its customers a $95 delivery and handling fee in connection with the sale of new and used motor vehicles. The fee was a preprinted charge on the retail buyers' orders. TheMotzer court found that many of the services and charges listed in the "Delivery and Handling" description were neither provided nor incurred and upon inquiry customers were told that the charge was a "standard fee" that had to be "on every car." Id. at 190. Based on these factual findings, the court affirmed the trial court's conclusion that such practices were unfair and deceptive. The Motzer court did not, however, hold that the use of an invoice with a predetermined, preprinted charge alone violates the CSPA.
 {¶ 21} This case is factually distinguishable from Motzer
on several grounds. First, there is evidence in the record that at least some supplies were used during each of Roto-Rooter's service calls.[3] Second, there is no evidence of a uniform response by service technicians regarding the nature of the fee and whether such representation affected each customer's decision to pay the preprinted fee. Finally, Motzer did not involve a class action, but rather litigation over services actually received or not received by five individuals. Significantly, theMotzer court found the dealership's actions to be unfair and deceptive only after conducting a factual inquiry into each of the transactions.
 {¶ 22} On the other hand, we find this court's decision inHoang, supra, analogous to the instant case. In Hoang, the plaintiff asserted E*Trade had allegedly promised to provide continuous and/or reliable trading services and that E*Trade failed to provide such service due to various system interruptions. Id. at 366. Even though each plaintiff's claim stemmed from the same Customer Agreement and a "common course of conduct," we found class certification was inappropriate because there was no evidence of class-wide injury. As a result, we concluded that liability as to each plaintiff's claim could not be ascertained on a class-wide basis in a single adjudication. Id. at 371. Rather, we found that the customers impacted by the system interruptions would have to be analyzed on a "trade by trade" basis in order to determine their actual injury. In reaching this conclusion, we explained:
"[S]ome of the plaintiffs have suffered damages as a result ofE*Trade's system interruptions while others have not. SomeE*Trade customers may not have been trading during any of thesystem interruptions, in which case they were not injured andhave no claims. Customers that were trading may not have sufferedany losses as a result of a system interruption, in which casethey have no claims. The trading of customers who were impactedby the system interruptions would have to be analyzed on a `tradeby trade' basis to determine what price the customer might haveobtained had the system interruption not occurred.
 * * This analysis is complex because it requires considerationof each individual transaction, other transactions in the samesecurity that occurred in the market, as well as the marketconditions at the time, including the number of orders waiting tobe executed in the market, the size and type of those orders, andother factors. Further, some customers who were impacted by thesystem interruptions may have actually benefitted from theinterruption, in which case they have no claims." Hoang, supraat 370-371.
 {¶ 23} Similarly, the instant case requires a case-by-case analysis of each service call. Linn has offered no evidence thatall class members have suffered some harm to which common questions of law or fact apply. In fact, it is possible that some members of the class may have received miscellaneous supplies exceeding the amount actually charged. Moreover, the analysis involved in the instant case requires consideration of the supplies used, the nature of the service provided, the representations made by technicians, and each plaintiff's understanding of the fee. As a result, we find that the trial court abused its discretion by certifying the class when common questions of fact do not predominate.
 {¶ 24} Accordingly, Roto-Rooter's second assignment of error is well taken. Having found the predominance requirement has not been met, we find the remaining assignments of error to be moot.[4]
 {¶ 25} Judgment reversed and case remanded for further proceedings consistent with this opinion.
 {¶ 26} This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
ANTHONY O. CALABRESE, JR., J. CONCURS.
[1] At oral argument, Roto-Rooter's counsel indicated that prices for its services ranged from $75 to $7,500.
[2] The record does not support the trial court's conclusion that Roto-Rooter's technicians relied on a uniform script to answer customers' questions. Although Linn presented written materials prepared by Roto-Rooter describing its response as to the purpose of the fee, the record also reveals that each of the 35 branches had its own instructions and that general managers maintained flexibility regarding description of the charge. Moreover, there are inconsistencies within the Roto-Rooter memoranda as to the purpose of the fee and suggested responses to customers.
[3] Although Roto-Rooter did not track the amount of miscellaneous supplies used on each individual service call, it did track the aggregate cost of the supplies. In fact, Roto-Rooter submitted evidence indicating that its actual overall costs exceeded the charge's revenue.
[4] Roto-Rooter's first, third, and fourth assignments of error pertain to other requirements set forth under Civ.R. 23 for class certification, i.e., common questions of law, identifiable class, superiority, and manageability. In its last three assignments, Roto-Rooter challenges: class certification under CSPA, the trial court's findings pertaining to the merits of the case, and application of Ohio law to a nationwide class.
 SEAN C. GALLAGHER, J. DISSENTS (SEE SEPARATE DISSENTINGOPINION).