OPINION
{¶ 1} Plaintiff-appellant, Christopher T. Cicero ("appellant"), appeals the denial of his motion to certify a class, in this action for damages and declaratory and injunctive relief against defendants-appellees, U.S. Four, Inc., W.D. Equipment Rental, Inc., John Basinger, Josh Wellington, and Golding Enterprises, LLC (collectively, "appellees"), for claimed violations of the federal Telephone Consumer Protection Act of 1991 ("TCPA"). *Page 2 
 {¶ 2} This case began on May 4, 2006, when appellant filed a complaint against appellees, on behalf of himself and others similarly situated, pursuant to Section 227(b)(3)(A)-(C), Title 47, U.S.Code. Appellant alleged that, in May 2004, appellees sent an unsolicited facsimile ("fax") transmission to his fax machine advertising an adult entertainment venue called "Dockside Dolls," in violation of Section 227(b)(1)(C), Title 47, U.S.Code. Appellant further alleged that, between 2002 and 2005, appellees had sent hundreds of unsolicited fax transmissions advertising "Dockside Dolls," without the recipients' prior express permission or invitation, all in violation of the TCPA.
 {¶ 3} The TCPA prohibits the sending of unsolicited advertisements to fax machines. The version of the TCPA applicable to appellant's claims provided, in pertinent part:
 (b) Restrictions on use of automated telephone equipment.
 (1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States —
 (C) to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine[.][1] *Page 3 
 {¶ 4} Under the applicable version of the TCPA, the term "unsolicited advertisement" means "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission." Section 227(a)(4), Title 47, U.S.Code.
 {¶ 5} On December 28, 2006, appellant filed a motion to certify a class pursuant to Civ.R. 23. Therein, appellant requested that the court of common pleas certify a class defined as follows:
 All persons located within the telephone area code of 614 or 740 who, at any time between May 4, 2002 and July 8, 2005, without their prior permission or invitation, were sent an unsolicited facsimile by or on behalf of any Defendant promoting the commercial availability of any property, goods or services of "Dockside Dolls."
 {¶ 6} The trial court denied the motion for two reasons. The court found: (1) members of the class cannot be identified with reasonable effort; and (2) the action was not maintainable under any of the grounds specified in Civ.R. 23(B).
 {¶ 7} Appellant timely appealed, and advances two assignments of error for our review, as follows:
 Assignment of Error No. 1:
 THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING PLAINTIFF'S MOTION TO CERTIFY CLASS PURSUANT TO RULE 23 OF THE OHIO RULES OF CIVIL PROCEDURE.
 Assignment of Error No. 2:
 THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO MODIFY PLAINTIFF'S PROPOSED CLASS TO COMPLY WITH RULE 23 OF THE OHIO RULES OF CIVIL PROCEDURE. *Page 4 
 {¶ 8} "The class action is an invention of equity." Ritt v. BillyBlanks Ent., 171 Ohio App.3d 204, 2007-Ohio-1695, 870 N.E.2d 212, ¶ 32, citing Amchem Prods., Inc. v. Windsor (1997), 521 U.S. 591, 613,117 S.Ct. 2331, 138 L.Ed.2d 689. Rule 23 of the Ohio Rules of Civil Procedure governs class action certification in Ohio. That rule provides, in pertinent part:
 (A) Prerequisites to a class action.
 One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
 (B) Class actions maintainable.
 An action may be maintained as a class action if the prerequisites of subdivision (A) are satisfied, and in addition:
 (1) the prosecution of separate actions by or against individual members of the class would create a risk of
 (a) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or
 (b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
 (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or *Page 5 
 (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action.
 {¶ 9} "A trial court's decision to certify or not to certify an action as a class action may only be reversed on a showing that the trial court abused its discretion." Hansen v. Landaker (Dec. 7, 2000), Franklin App. No. 99AP-1117, 2000 Ohio App. LEXIS 5680, at *6, citing Baughman v.State Farm Mut. Auto. Ins. Co. (2000), 88 Ohio St.3d 480, 483,727 N.E.2d 1265. This standard of review is appropriate due to the trial court's "special expertise and familiarity with case-management problems and its inherent power to manage its own docket." Hamilton v. Ohio Sav.Bank (1998), 82 Ohio St.3d 67, 70, 694 N.E.2d 442.
 {¶ 10} "However, a trial court does not have unlimited discretion in deciding whether or not to certify a class action, but must exercise its discretion within the boundaries established by Civ.R. 23. * * * A determination by a trial court regarding class certification that is clearly outside the boundaries established by Civ.R. 23, or that suggests that the trial court did not conduct a rigorous analysis into whether or not the prerequisites of Civ.R. 23 are satisfied, will constitute an abuse of discretion." Id. at *6-7, citingHamilton, supra, at 70. *Page 6 
 {¶ 11} "A plaintiff must prove by a preponderance of the evidence that class certification is appropriate." Ritt, supra, at ¶ 34. InHamilton, supra, the Supreme Court of Ohio stated:
 The following seven requirements must be satisfied before an action may be maintained as a class action under Civ.R. 23: (1) an identifiable class must exist and the definition of the class must be unambiguous; (2) the named representatives must be members of the class; (3) the class must be so numerous that joinder of all members is impracticable; (4) there must be questions of law or fact common to the class; (5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and (7) one of the three Civ.R. 23(B) requirements must be met.
Hamilton at 71.
 {¶ 12} "[T]he failure to meet any one of these prerequisites will defeat a request for class certification * * *." Schmidt v. AvcoCorp. (1984), 15 Ohio St.3d 310, 313, 15 OBR 439, 473 N.E.2d 822. "In determining whether the seven class certification requirements have been met, a trial court is not to consider the merits of the claims.Ojalvo v. Bd. of Trustees of Ohio State Univ. (1984), 12 Ohio St.3d 230,233, 12 OBR 313, 466 N.E.2d 875. However, a trial court may consider any evidence before it at that stage of the proceedings which bears on the issue of class certification. Senter v. General Motors Corp. (C.A.6, 1976), 532 F.2d 511, 523." Hansen, supra, at *8.
 {¶ 13} In the present case, the trial court found that two of the seven requirements for class certification were not satisfied. We will discuss each requirement in turn. First, the trial court found that appellant did not meet the first requirement — that the class be identifiable. "A class definition: (1) determines who is entitled to notice * * *; (2) *Page 7 
determines the nature of the relief that can be awarded and who is entitled to that relief; and (3) identifies the plaintiffs who will be bound by the judgment if they lose and insures that those actually harmed by the defendant's wrongful conduct will receive the relief ultimately awarded." Apartment Investment and Mgmt. Co. v. Suggs Assocs., P.C. (2004), 129 S.W.3d 250, 253-254.
 {¶ 14} This requirement "* * * will not be deemed satisfied unless the description of the class is sufficiently definite such that it is administratively feasible for the court to determine whether or not a particular individual is a member of the class. Stated another way, the class must be defined with enough precision `to permit identification within a reasonable effort.'" (Citations omitted.) Hansen, supra, at *9, quoting Warner, supra, at 96.
 {¶ 15} This requirement is not to be confused with the predominance requirement in Civ.R. 23(B)(3), which inquires whether "separate adjudications are likely required to finally determine the action."Hamilton, supra, at 73. "The focus at this stage is on how the class is defined. `The test is whether the means is specified at the time of certification to determine whether a particular individual is a member of the class.'" Id., quoting Planned Parenthood Assn. of Cincinnati,Inc. v. Project Jericho (1990), 52 Ohio St.3d 56, 63, 556 N.E.2d 157. "The question as to whether there are differing factual and legal issues `does not enter into the analysis until the court begins to consider the Civ.R. 23(B)(3) requirement of predominance and superiority.'" Id., quoting Marks v. C.P. Chem. Co., Inc. (1987), 31 Ohio St.3d 200, 202,31 OBR 398, 509 N.E.2d 1249.
 {¶ 16} The class is sufficiently definite if it is "appropriately defined by reference to defendant's conduct." Hamilton, supra, at 73. That is, "the manner in which the *Page 8 
defendant acted toward an ascertainable group of persons." Id., quotingBernard v. First Natl. Bank of Oregon (1976), 275 Ore. 145, 156-157, 550
P.2d 1203. If one need only look to the actions of the defendant to determine whether an individual is a member of the class, then it is an abuse of discretion to deny class certification based on the absence of an identifiable class. Id. at 74.
 {¶ 17} Appellant argues that the trial court focused its analysis too heavily on the identification requirement, in violation of the admonition that "[n]o one factor under Civ.R. 23(A) or (B)(3) should be overemphasized to defeat the fundamental purpose behind Civ.R. 23."Ojalvo, supra, at 235.[2] Appellant maintains that the proposed class is readily identifiable because appellees admitted, in answers to interrogatories propounded in an action other than the present one, that they sent Dockside Dolls advertisements via fax to approximately 60 car dealerships and 20 golf courses identified by name in handwritten lists that appellees produced in discovery in the other action, and to numerous attorneys and law firms listed in the 2003 Columbus Bar Association Directory. Appellees point out however, that in answer to interrogatories propounded in the present case, appellees referred to the discovery produced in the other action, but stated that those records reflect "certain business that may have been contacted on May 4, 2004."[3] (Emphasis added.) Further answering the interrogatory, appellees stated, "[h]owever, there is no way to verify which law firms, or businesses for that matter, were included in the transmissions." *Page 9 
 {¶ 18} Interrogatory Number 4 of Plaintiff's First Set of Interrogatories to Appellee, U.S. Four, Inc., inquires, "Please provide all of the fax numbers, and all of the corresponding names and addresses of the fax recipients, to which Defendants transmitted by telephone facsimile machine the same or similar advertisement as is attached to * * * [the complaint] in April or May, 2004." Notable is the fact that the interrogatory does not limit the inquiry to those recipients who received unsolicited fax advertisements; the interrogatory broadly requests the names of all recipients. Also notable is the fact that the list is limited to April or May 2004, and does not cover the same time period included within the definition of the proposed class.
 {¶ 19} Thus, the only evidence before the trial court, bearing upon the issue of identity of the class, was a handwritten list of entities that may have been sent the fax advertisement at issue on May 4, 2004. This evidence provides no insight into whether any of these entities indeed received the fax, or whether any fax sent to these entities was unsolicited. Furthermore, the trial court had no evidence before it as to the identity of recipients of the advertisement during the remainder of the time period in the definition of the proposed class, or as to whether any other such faxed advertisements were unsolicited.
 {¶ 20} This case is similar to the case of Petty v. Wal-Mart Stores,Inc. (2002), 148 Ohio App.3d 348, 773 N.E.2d 576, discretionary appeal not allowed, 96 Ohio St.3d 1466, 2002-Ohio-3910, 772 N.E.2d 1203. In that case, the plaintiffs alleged that defendant Wal-Mart engaged in wage and hour violations, including forcing employees to work "off the clock" and to forego rest and meal breaks, contrary to written policy and oral agreements. The plaintiffs moved to certify a class consisting of "all current and former hourly *Page 10 
employees of Ohio Wal-Mart stores who have been required and/or permitted to work off the clock without compensation and/or miss their lunch and meal breaks from the period beginning fifteen years prior to the filing of the complaint." Later, they modified the proposed class to include "all past and present Ohio Wal-Mart employees."
 {¶ 21} The four named plaintiffs all testified at deposition that they had been pressured to work off the clock and had not received their rest and meal breaks. Their testimony further revealed that sometimes employees missed breaks in order to be able to leave early, and some employees forgot to clock in and out. The plaintiffs sought to identify members of the class through Wal-Mart's own time records and reports.
 {¶ 22} The trial court denied certification on the ground that the proposed class was not sufficiently identifiable. In affirming the trial court's decision, the court of appeals noted that Wal-Mart's time records would only indicate punch-in and punch-out times, and whether an employee took all required meal breaks. The records would not indicate the reason for any missed breaks, nor would they demonstrate whether any particular employee was required or pressured to work "off the clock."
 {¶ 23} The court of appeals contrasted the case to cases in which the defendant's own records could be used to ascertain the members of the class, and in which the definition of the proposed class was limited to people who were actually exposed to the alleged illegal conduct. The court noted, "[t]he test of class identifiability is whether means are specified at the time of the certification that will permit a determination whether a particular individual is a member of the class." Id. at 354, citing Hamilton, supra, at 73. Though it would be fairly simple to identify "all past and present Wal-Mart employees" through Wal-Mart's records, it would be impossible to ascertain which of those employees *Page 11 
had been harmed by Wal-Mart's allegedly injurious conduct. The court stated, "[w]ithout a definition of the class related to the plaintiff's theory of recovery, the trial court would have to conduct individualized inquiry with respect to each individual's exposure to the alleged conduct of Wal-Mart in order to determine whether that individual was the subject of tortious conduct by Wal-Mart, which would obviate the purpose of class actions." Id.
 {¶ 24} Indeed, that case was unlike other cases in which the class was sufficiently identified because its definition focused on the defendant's conduct, and the identity of each class member could be easily ascertained through examination of the defendant's business records. On such case is Cope v. Metro. Life Ins. Co. (1998),82 Ohio St.3d 426, 696 N.E.2d 1001, in which the plaintiffs alleged that the defendant had engaged in a scheme to collect larger commissions and front-end fees by charging new-policy fees to existing customers purchasing replacement policies, and by intentionally omitting the state-mandated written disclosure warnings when issuing replacement life insurance. In that case, identification of class members could be easily achieved by examining the defendant's records to determine which of the defendant's existing customers were sold replacement policies without the required notices and who were charged front-end, or new-policy, fees. The alleged misconduct did not consist in any pre-contract oral misrepresentations or other conduct that could only be ascertained through inquiry into each policyholder's situation; rather, it occurred post-contract and was all reflected in the defendant's records. Therefore, it was relatively easy to ascertain the identity of class members.
 {¶ 25} In In re Foundry Resins Antitrust Litigation (S.D.Ohio 2007),242 F.R.D. 393, the proposed class was identifiable because it specified a particular group of resin *Page 12 
purchasers that was allegedly harmed by the defendants' scheme to overcharge for their products. Though the geographic location was large — the entire United States — the definition targeted the specific conduct of the defendants and the consequent harm, and the court could ascertain class membership in an objective manner, by looking at the defendants' records containing transaction data.
 {¶ 26} In contrast to Cope and Foundry Resins, appellant, like the plaintiffs in Petty, alleges misconduct and consequent injury not reflected in the record; specifically, there is no evidence to assist the court in determining which entities or persons actually received the fax advertisement at issue; whether any potential class member who did receive the advertisement received it during the relevant time period; and, most importantly, whether or not those who in fact received the advertisement had given their prior, express invitation or permission to receive the fax.
 {¶ 27} As we recalled earlier, "[t]he test is whether the means is specified at the time of certification to determine whether a particular individual is a member of the class." Hamilton, supra, at 73, quotingPlanned Parenthood Assn. of Cincinnati, Inc. v. Project Jericho (1990),52 Ohio St.3d 56, 63, 556 N.E.2d 157. The proposed class in the present case fails to meet that test because the means is not specified to determine whether a particular individual is a victim of appellees' alleged misconduct. The class is not sufficiently definite because it is not defined "by reference to defendant's conduct." Id. Rather, it is defined by reference to both appellees' conduct (the sending of a fax advertisement during a particular time period) and to the conduct of the putative class members (whether they did or did not give prior express invitation or permission for the *Page 13 
fax to be sent), without evidence of record providing a means of determining whether a particular individual or entity is a member of the class.
 {¶ 28} Put another way, on the record before us, the proposed class definition "flies directly in the face of a basic tenet of class certification: a court may not inquire into the merits of the case at the class certification stage. * * * Here, defining the purported class * * * requires addressing the central issue of liability to be decided in the case. Determining a membership in the class would essentially require a mini-hearing on the merits of each case." Forman v. DataTransfer, Inc. (E.D.Pa.1995), 164 F.R.D. 400.
 {¶ 29} In Forman, as in the present case, the plaintiff brought an action under Section 227(b)(1)(C), Title 47, U.S. Code, based on alleged sending of unsolicited fax advertisements. The plaintiff sought to certify a class of "all residents and businesses who have received unsolicited facsimile advertisements since January 1, 1992 from [defendant] Data Transfer, Inc." The court found that class certification was improper because in order to define the class the court would have to determine the defendant's liability as to each individual purported class member.
 {¶ 30} In Kenro, Inc. v. Fax Daily, Inc. (S.D.Ind.1997),962 F.Supp. 1162, the court denied class certification to a plaintiff alleging violations of Section 227(b)(1)(C), Title 47, U.S. Code when the proposed class definition incorporated the language of the statutory prohibition, because the class definition "would require the court to conduct individual inquiries with regard to each potential class member in order to determine whether each potential class member had invited or given permission for transmission of the challenged fax advertisements * * *." Id. at 1169. Accord Livingston v. U.S. Bank, N.A. (2002), 58 P.3d 1088. *Page 14 
 {¶ 31} This court has previously affirmed denial of class certification when determination of class membership for any individual would require an examination of the merits of the legal claims of that particular potential class member. In Bungard v. Ohio Dept. of Job Family Servs., Franklin App. No. 05AP-43, 2006-Ohio-429, discretionary appeal not allowed, 109 Ohio St.3d 1507, 2006-Ohio-2998,849 N.E.2d 1028, the plaintiffs brought claims for breach of contract, breach of fiduciary duty, negligence, and violations of the CSPA, based on the defendant having allegedly rendered child support services that were noncompliant with state and federal requirements. They sought certification of a class of "all individuals who, as shown by the program records maintained by defendant and its agents or contractees, (1) were or are eligible for child support services under the program * * * at any time on or after September 18, 2000, and (2) who did not receive services in compliance with all state and federal support requirements." Id. at ¶ 11.
 {¶ 32} This court found no abuse of discretion in the trial court's denial of class certification based upon failure to meet the identification requirement. In so doing, we explained, "* * * plaintiffs have defined the class members as those who did not receive services in compliance with the law, i.e., those were `legally injured' by defendant's actions or inactions. In order to determine class membership of an individual, an examination of the merits of the legal claims of that particular potential member would be required. Therefore, in assessing the reasonableness of determining class membership, it is pertinent that determining membership in this case requires an analysis of the merits of the legal claims of potential members." Id. at ¶ 15. Here, too, the class is defined by *Page 15 
reference to matters beyond the conduct of the defendants, without evidence from which a court can determine class membership at the time of certification.
 {¶ 33} Applying the authorities discussed hereinabove, we find no abuse of discretion in the trial court's finding that class certification would be improper because the requirement of class identification has not been satisfied.
 {¶ 34} In addition to finding the class was not sufficiently identified, the trial court in this case also determined that the action was not maintainable under any of the grounds specified in Civ.R. 23(B). Specifically, the trial court found that appellant could not satisfy either Civ.R. 23(B)(2) or (3).[4] Appellant does not address the trial court's decision with respect to Civ.R. 23(B)(2), but confines himself to the proposition that his action is maintainable as a class action under Civ.R. 23(B)(3). Therefore, we, too, will confine our analysis to that subsection of the rule.
 {¶ 35} Under Civ.R. 23(B)(3), for a class action to be maintainable, the court must find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. "The matters pertinent to the findings include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of *Page 16 
the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action." Civ.R. 23(B)(3).
 {¶ 36} "The purpose of Civ.R. 23(B)(3) was to bring within the fold of maintainable class actions cases in which the efficiency and economy of common adjudication outweigh the interests of individual autonomy. * * * Thus, `this portion of the rule also was expected to be particularly helpful in enabling numerous persons who have small claims that might not be worth litigating in individual actions to combine their resources and bring an action to vindicate their collective rights.'"Hamilton, supra, at 80, quoting Wright, Arthur R. Miller Mary Kay Kane, Federal Practice and Procedure (2nd Ed.1986) 518, Section 1777.
 {¶ 37} "Performing a `rigorous analysis' of the Civ.R. 23(B)(3) predominance requirement necessitates an examination of `common' versus `individual' issues." Linn v. Roto-Rooter, Inc., Cuyahoga App. No. 82657, 2004-Ohio-2559, ¶ 14, discretionary appeal not allowed,103 Ohio St.3d 1480, 2004-Ohio-5405, 816 N.E.2d 255. "Common questions need only predominate; they need not be dispositive of the litigation."Foundry Resins, supra, at 409.[5] However, "[a] predominance inquiry is far more demanding than the Civ.R. 23(A) commonality requirement * * *." Linn, supra, at ¶ 14. Thus, "* * * it is generally held that in determining whether common questions of law or fact predominate over individual issues, it is not sufficient that common questions merely exist; rather, the common questions must represent a significant aspect of the case and they must be able *Page 17 
to be resolved for all members of the class in a single adjudication."Schmidt v. Avco Corp. (1984), 15 Ohio St.3d 310, 313, 15 OBR 439,473 N.E.2d 822.
 {¶ 38} Moreover, "[i]n determining whether common questions of law and fact predominate, the focus of the inquiry is directed toward the issue of liability." Forman, supra, at 404, citing Bogosian v. Gulf OilCorp. (C.A.3, 1977), 561 F.2d 434, 456, certiorari denied (1978),434 U.S. 1086, 55 L.Ed.2d 791, 98 S.Ct. 1280. Therefore, "[i]t is now well established that `a claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position.'" Cope, supra, at 429-430, quoting Lockwood Motors, Inc. v. Gen. Motors Corp.
(D.Minn.1995), 162 F.R.D. 569, 580.
 {¶ 39} "A common question is one that can be resolved for each class member in a single hearing, such as the question of whether an employer engaged in a pattern and practice of unlawful discrimination against a class of its employees. A question is not common, by contrast, if its resolution turns on a consideration of the individual circumstances of each class member." Levitt v. Fax.com (D.Md.2007), 2007 U.S. Dist. LEXIS 83143, at *7, quoting Thorn v. Jefferson-Pilot Life Ins. Co. (C.A.4, 2006), 445 F.3d 311, 319.
 {¶ 40} In cases where an element of a claim may be sufficiently established by inference or presumption, the predominance requirement will be held to be met, even where the element in question might otherwise require an individualized inquiry into each class member's situation. See Cope, at 435-436. For example, proof of reliance may be by inference in a case alleging a systematic fraud, where proof of liability may be shown *Page 18 
once for all class members. See, e.g., Ritt v. Billy Blanks Ent,171 Ohio App.3d 204, 2007-Ohio-1695, 870 N.E.2d 212, discretionary appeal not allowed, 2007-Ohio-5056, 874 N.E.2d 538. On the other hand, where such an individualized element cannot be proven by inference or presumption, proof of the element will require a separate examination of each prospective class member, rendering class action status untenable. See, e.g., Schmidt, supra; Hamilton, supra.
 {¶ 41} Where the issue of whether the defendant's alleged injurious conduct is actionable (that is, the issue of liability) as to any given class member depends not only on the defendant's common course of conduct, but on evidence pertaining to differing situations of individual class members, common issues will not be deemed predominant over individual issues in the case. See, e.g., Linn, supra (predominance requirement unmet where liability for alleged scheme to include a pre-printed "miscellaneous supply" charge on all invoices could not be proven without individual trial examining the amount and value of the supplies used, the nature of the work performed, and representations made by service technicians).
 {¶ 42} In the present case, the gravamen of appellant's complaint is not a common course of conduct, but a series of individual fax transmissions under individual circumstances, each of which may or may not be a violation of the TCPA. The TCPA prohibits only "unsolicited" advertisements. Moreover, under the TCPA, a person can give their "express invitation or permission" to receive fax advertisements either "orally or in writing." Carnett's, Inc. v. Hammond (2005), 279 Ga. 125,610 S.E.2d 529; see, also, Livingston v. U.S. Bank, N.A. (2002),58 P.3d 1088, 1091. Class certification would be improper under Civ.R. 23(B)(3) because issues individual to each fax recipient (whether *Page 19 
appellees had either prior express invitation or permission to send fax advertisements to the recipient) and part of each individual plaintiff's burden of proof, would predominate over issues common to the entire class. Accord Blitz v. Agean, Inc. (Dur.Cty.Sup.Ct., June 25, 2007),2007 NCBC 21; Kondos v. Lincoln Prop. Co. (Texas App. 2003),110 S.W.3d 716, 721-722 ("* * *[E]ven if only a relatively small number of class members [in a TCPA action] gave express permission to receive the faxes in question, either a jury or the trial court * * * must still ascertain whether each class member gave or did not give express permission to receive the faxes in question. * * * [This] is not likely to be a `relatively easy' task for a single jury or the trial court to resolve * * *." Id. at 721.).
 {¶ 43} "Class actions are a superior method of adjudication where a large number of plaintiffs may have been injured, but not to an extent to induce the instigation of individual litigation." Forman, supra, at 404. In the present case, it is an inescapable fact that individualized inquiry into the facts and circumstances of each recipient's prior "invitation or permission" will be necessary should this matter proceed as a class action. This could not be "resolved for all members of the class in a single adjudication." Schmidt v. Avco Corp. (1984),15 Ohio St.3d 310, 313, 15 OBR 439, 473 N.E.2d 822. We reach this conclusion not based on any interpretation of the TCPA, but on application of Civ.R. 23 to the record herein
 {¶ 44} For the foregoing reasons, the trial court did not abuse its discretion in determining that appellant failed to meet the predominance and superiority requirements of Civ.R. 23(B)(3). Though "[n]o one factor under Civ.R. 23(A) or (B)(3) should be overemphasized to defeat the fundamental purpose behind Civ.R. 23[,]" Ojalvo v. Bd. of Trustees ofOhio State Univ. (1984), 12 Ohio St.3d 230, 235, 12 OBR 313, *Page 20 466 N.E.2d 875, "the failure to meet any one of * * * [the seven] prerequisites will defeat a request for class certification * * *." Schmidt, supra, at 313. Appellant having failed to meet both the identification requirement and the Civ.R. 23(B)(3) requirements, the trial court did not abuse its discretion in denying appellant's motion to certify. Accordingly, appellant's first assignment of error is overruled.
 {¶ 45} In support of his second assignment of error, appellant argues that the trial court abused its discretion when it denied the motion to certify on the grounds that the proposed class was unidentifiable, but failed to sua sponte modify the class definition to make it sufficiently identifiable. Citing Ritt, supra, appellant argues that the Supreme Court of Ohio has encouraged the trial courts to exercise their discretion to sua sponte modify an unidentifiable class. In response, appellees argue that the Supreme Court of Ohio has never stated that it is an abuse of discretion for a trial court not to sua sponte modify a class definition. We agree, as our research reveals that this is true. Moreover, as appellees correctly point out and appellant concedes, appellant never requested that the trial court modify the proposed class definition in the event it found infirmities therein. We perceive no abuse of discretion on the part of the trial court. For this reason, appellant's second assignment of error is overruled.
 {¶ 46} Having overruled both of appellant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
 McGRATH, J., concurs. BRYANT, J., concurs separately.
[1] The version of 47 U.S.C. § 227(b)(1)(C) in effect at the time of the alleged violations is materially different from the current statute, in that the current statute contains an exception for solicitations sent to those with whom the sender has an "established business relationship." See Pub.L. No. 109-21, § 2(a) (July 9, 2005)119 Stat. 359 ("Junk Fax Protection Act of 2005"). Because no "established business relationship" exception applies to the transmissions alleged in the present case, inquiry into whether putative class members had an established business relationship with appellees is unnecessary. Given that the applicable version of the statute defines "unsolicited advertisement" as one sent without the recipient's "priorexpress permission" (emphasis added) (47 U.S.C. § 227[a][4]), permission could not be inferred or deemed given, on account of an established business relationship between the parties, for fax transmissions that were sent prior to the 2005 amendment. Grady v. Progressive BusinessCompliance, Cuyahoga App. No. 89350, 2007-Ohio-60781, ¶ 12.
[2] Appellant also argues that the trial court erred in reasoning that including businesses within the proposed class renders it inadequately defined because businesses are not "individuals" for purposes of the Ohio Consumer Sales Practices Act ("CSPA"), when appellant has not asserted any claims under the CSPA. According to appellant, this clearly erroneous analysis constitutes an abuse of discretion. However, we note that the trial court did analyze the identification requirement in terms of appellant's claims under the TCPA, which analysis is susceptible to this court's review.
[3] Answer of Appellee, U.S. Four, Inc., to Plaintiffs First Set of Interrogatories, Interrogatory No. 4.
[4] It appears that appellant did not argue below that he met the requirements of Civ.R. 23(B)(1), and the trial court did not address that subsection of the rule. Furthermore, the parties have not made arguments on appeal with respect to Civ.R. 23(B)(1).
[5] For example, courts generally hold that variations in damage amounts among class members are not an appropriate reason to deny class certification. See, e.g., Moore v. CM Properties, Montgomery App. No. 19388, 2003-Ohio-1379, ¶ 11; Olden v. LaFarge Corp. (C.A.6, 2004),383 F.3d 495, 508-509. *Page 21