DUNKELMAN et al.,[1] Appellees,

v.

CINCINNATI BENGALS, Appellant.

[Cite as *Dunkelman v. Cincinnati Bengals,* 170 Ohio App.3d 224, 2006-Ohio-6825.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–050814.

Decided Dec. 22, 2006.

---

1. While Jay Dunkelman's name appears on the notice of appeal, the record reveals that he died shortly after the first appeal and is no longer a party to the lawsuit.

Lopez, Hodes, Retstaino, Milman & Skikos, Janet G. Abaray, Beverly H. Pace, and Calvin S. Tregre Jr., for appellees.

Taft, Stettinius & Hollister, H. Stuart Dornette, Eric Combs, and Katherine Ruwe, for appellant.

SUNDERMANN, Judge.

{¶ 1} The Cincinnati Bengals appeal the judgment of the Hamilton County Court of Common Pleas granting plaintiffs-appellees Edward Walton, Robert and Betty Brown, Douglas Menne, Keith Chabut, and Ronald Wellman's motion for class certification and motion for summary judgment on their declaratory-judgment claim, as well as their motion to dismiss the Bengals' counterclaims for breach of contract against Brown, Walton, and Wellman.

## The Class–Action Lawsuit

{¶ 2} Plaintiffs-appellees are the named representatives in a class-action lawsuit against the Bengals. Plaintiffs signed an order form to purchase personal seat licenses or Charter Ownership Agreements for club seats in Paul Brown Stadium, but then opted not to purchase their club-seat season tickets annually. When the Bengals contacted the plaintiffs several years later and notified them that they were in default of their obligation to pay for their club-seat tickets, the plaintiffs filed suit against the Bengals, alleging common-law claims for negligent misrepresentation and fraud, as well as statutory violations of the Ohio Consumer Sales Practices Act, and requesting declaratory and injunctive relief. Plaintiffs also filed a motion for a preliminary injunction to prohibit the Bengals from communicating with previous club-seat holders to collect monies for club-seat season tickets until the merits of the case had been adjudicated.

{¶ 3} The Bengals moved to stay the class-action suit, arguing that the plaintiffs were bound by the arbitration provision in a subsequent document entitled the Club Seat License Agreement ("CSLA"). The trial court granted the Bengals' motion for a stay pending arbitration and stayed the plaintiffs' motion for a preliminary injunction pending the outcome of the arbitration.

## Dunkelman I

{¶ 4} The plaintiffs appealed the trial court's decision.[2]  On appeal, they argued that the trial court had erred in granting the Bengals' motion to stay the proceedings.[3]  They maintained that the contract between the Bengals and the plaintiffs was formed when they signed brochures for club-seat licenses and submitted their initial payments.[4]  The Bengals argued, among other things, that the CSLA was valid because the plaintiffs' payments toward their season tickets served as separate consideration for the terms contained therein.[5]

{¶ 5} In holding that the Club Seat Brochure and Order Form was the controlling agreement between the parties, we rejected the Bengals' argument that the plaintiffs' payments following their receipt of the CSLA constituted consideration for the terms outlined in the CSLA.[6] As a result, we held that the arbitration provision in the CSLA was unenforceable because it appeared only in the terms of the CSLA, which the plaintiffs had not agreed to, and which did not constitute a contract between the parties.[7]  We further stated that because the plaintiffs had never agreed to the terms of the CSLA, they never agreed to the default and acceleration provisions that also appeared in that document.[8]  Thus, we held that the trial court had erred in granting the Bengals' motion to stay the proceedings pending arbitration.[9]  Consequently, we remanded the case to the trial court with instructions to lift the stay pending arbitration, to proceed with the case, and to rule on the plaintiffs' motion for a preliminary injunction.[10]

## Trial Court Proceedings Following Dunkelman I

{¶ 6} Following our remand in *Dunkelman I*, the parties joined in an agreed entry regarding the preliminary injunction.  Plaintiffs then filed an amended complaint, which removed Dunkelman, now deceased, as a named class represen-

---

2. *Dunkelman v. Cincinnati Bengals, Inc.*, 158 Ohio App.3d 604, 2004-Ohio-6425, 821 N.E.2d 198 ("*Dunkelman I* ").

3.  Id. at ¶ 13.

4.  Id.

5.  Id. at ¶ 36.

6.  Id. at ¶ 36–37.

7.  Id. at ¶ 39.

8.  Id. at ¶ 14 and ¶ 37.

9.  Id. at ¶ 39.

10.  Id. at ¶ 47.

tative and added Menne, Chabut, and Wellman as additional class representatives. Also added were two new claims: one for a violation of the Ohio Deceptive Trade Act and one for fraudulent inducement.

{¶ 7} Plaintiffs also moved for class certification on behalf of all club-seat license holders who had purchased their tickets with the original Club Seat Brochure but had then decided to stop purchasing tickets. The Bengals filed an answer to the amended complaint and compulsory counterclaims against Brown, Walton, and Wellman. Plaintiffs moved for dismissal of the Bengals' counterclaims and for summary judgment on their claims for declaratory and injunctive relief. The plaintiffs sought a declaration that the only binding terms between the parties were found in the rules and regulations of the Club Seat Brochure and that those terms provided that the plaintiffs and the class could discontinue purchasing club-seat season tickets, with the only penalty being forfeiture of their seat license and their payment of $150 per seat, and that the Bengals could not rightfully demand payment for six to ten years of season tickets.

{¶ 8} The Bengals filed a cross-motion for summary judgment on their counterclaims. They argued that under the Club Seat Brochure, plaintiffs Brown, Walton, and Wellman had signed up for a lease of six, eight, or ten years and thus were obligated to purchase club-seat tickets for the term of years they had chosen. The trial court permitted the parties to engage in limited discovery with respect to the class-certification issues. Following discovery, the plaintiffs sought to certify a broader class consisting of all persons or entities who had purchased club-seat licenses through the Club Seat Brochure.

### Trial Court's Order

{¶ 9} After a one-hour hearing on the motions, the trial court granted the plaintiffs' motions for class certification on all their claims. The trial court's order certified a class of "all persons or entities who purchased club seat Charter Ownership Agreements ("COA") through the original Club Seat Brochure and/or Club Seat Order Form for Bengals football games in Paul Brown Stadium." The trial court also certified a subclass consisting of "all person or entities who purchased club seat COAs through the original Club Seat Brochure and/or Club Seat Order Form for Bengals football games in Paul Brown Stadium, who then discontinued or attempted to discontinue purchasing club seat season tickets." The trial court's order additionally stated that the court was certifying the class under all three subsections of Civ.R. 23(B).

{¶ 10} In the same order, the trial court granted the plaintiffs' motion for summary judgment and dismissed the Bengals' counterclaims. The trial court held that "under the terms of the contract, class members are under no obligation to purchase club seat tickets for 6, 8, or 10 years and may discontinue the

purchase of club seat tickets at any time with the only penalty being the forfeiture of the club seat COA and the $150 per club seat COA purchased." The trial court used the same holding to dismiss the Bengals' counterclaims. The trial court, finding no just reason for delay, certified the judgment pursuant to Civ.R. 54(B). In this appeal, the Bengals now raise three assignments of error.

## Class Certification

{¶ 11} In their first assignment of error, the Bengals argue that the trial court erred in granting the plaintiffs' motion for class certification, because the trial court failed to provide any analysis when certifying the class, the certification order failed to meet the express requirements for class certification under the Ohio Consumer Sales Practices Act ("OCSPA"), and the plaintiffs could not adequately represent the certified class.

{¶ 12} In its order, the trial court certified the class with respect to all of the plaintiffs' claims, including their OCSPA claim. "R.C. 1345.09(B) provides that a consumer may qualify for a class-action status only when a supplier acted in the face of prior notice that its conduct was deceptive or unconscionable. The prior notice may be in the form of (1) a rule adopted by the Attorney General under R.C. 1345.05(B)(2) or (2) a court decision made available for public inspection by the Attorney General under R.C. 1345.05(A)(3)."[11] In *Johnson v. Microsoft Corp.*,[12] this court affirmed a trial court's decision dismissing a class-action complaint for failure to plead compliance with the prerequisites of R.C. 1345.09(B).[13]

{¶ 13} In this case, the plaintiffs did not plead in their filings, nor did the trial court find, that the requirements set forth in R.C. 1345.09(B) had been met. Consequently, we hold that the trial court erred as matter of law in certifying the plaintiffs' OCSPA claim as a class action in the absence of any "prior rule or court decision that would have entitled them to pursue [O]CSPA relief under R.C. 1345.09(B)."[14]

{¶ 14} With respect to the trial court's certification of the plaintiffs' four remaining claims, we note that the certification of a class action under Civ.R. 23 "involves a sophisticated and necessary judgmental appraisal of the future course

---

11. *Marrone v. Philip Morris USA, Inc.*, 110 Ohio St.3d 5, 2006-Ohio-2869, 850 N.E.2d 31, at ¶ 9.

12. 155 Ohio App.3d 626, 2003-Ohio-7153, 802 N.E.2d 712, at ¶ 20–21.

13. See, also, *Findlay v. Hotels.com, L.P.* (N.D.Ohio 2006), 441 F.Supp.2d 855, 863.

14. *Marrone*, 110 Ohio St.3d 5, 2006-Ohio-2869, 850 N.E.2d 31, at ¶ 30.

of [the] litigation." [15] Consequently, the Ohio Supreme Court has held that trial courts must "carefully apply the class action requirements and conduct a rigorous analysis into whether the prerequisites of Civ.R. 23 have been satisfied." [16] In *Robinson v. Johnston Coca–Cola Bottling Group, Inc.*, this court relied on that requirement in rejecting a trial court's class-certification order that contained no analysis.[17] In *Robinson*, we held that the trial court's failure to articulate any rationale for certifying a class action precluded meaningful appellate review and constituted an abuse of discretion.[18] Consequently, we remanded the cause to the trial court "so that it [could] conduct a rigorous analysis of the requirements of Civ.R. 23 in its consideration of plaintiffs' motion for class certification." [19]

{¶ 15} Our review of the record reveals that this case presents complex issues related to class certification. The trial court's entry certifying the class, however, is devoid of any rationale, yet alone any rigorous analysis, relating to any of the prerequisites for class certification. Given the inadequacy of the record before us, we cannot properly review the trial court's entry granting class certification with respect to the plaintiffs' remaining claims under an abuse-of-discretion standard. We therefore agree with the Bengals that the trial court's ruling must also be reversed on the basis of our holding in *Robinson*.[20] Consequently, we sustain the Bengals' first assignment of error for the reasons set forth in our analysis.

### The Club Seat Brochure

█ {¶ 16} In their second assignment of error, the Bengals argue that the trial court erred in dismissing their counterclaims. In their third assignment of error, they argue that the trial court erred in granting the plaintiffs' motion for a declaratory judgment. Because both of these assignments address the contractual obligations of the plaintiffs under the Club Seat Brochure, we address them together.

---

15. *Barber v. Meister Protection Servs.*, 8th Dist. No. 81553, 2003-Ohio-1520, 2003 WL 1564320, at ¶ 26–27, quoting *Waldo v. N. Am. Van Lines, Inc.* (W.D.Pa.1984), 102 F.R.D. 807.

16. *Hamilton v. Ohio Sav. Bank* (1998), 82 Ohio St.3d 67, 70, 694 N.E.2d 442.

17. *Robinson v. Johnston Coca–Cola Bottling Group, Inc.*, 153 Ohio App.3d 764, 2003-Ohio-4417, 796 N.E.2d 1, at ¶ 7.

18. Id. at ¶ 11–12.

19. Id. at ¶ 13.

20. See, also, *Maas v. Penn Cent. Corp.*, 11th Dist. No.2003–T–0123, 2004-Ohio-7233, 2004 WL 3090396, at ¶ 22–33; *Martin v. Grange Mut. Ins. Co.*, 11th Dist. Nos. 2002–G–2473 and 2002–G–2479, 2003-Ohio-4869, 2003 WL 22119513, at ¶ 26–33.

{¶ 17} The trial court held that "under the terms of the contract, class members are under no obligation to purchase club seat tickets for 6, 8, or 10 years and may discontinue the purchase of club seat tickets at any time with the only penalty being the forfeiture of the club seat COA and the $150 per club seat COA purchased." The same holding was used to justify the dismissal of the Bengals' counterclaims.

{¶ 18} The Bengals argue that the Club Seat Brochure unambiguously obligated the plaintiffs to purchase club seats for a definite lease term. They argue that under the plain language of the order form, the plaintiffs were bound to purchase tickets for the number of years they selected. The plaintiffs argue, on the other hand, that the contract unambiguously gave them the right not to purchase tickets and to forfeit their seat licenses. We agree with the plaintiffs.

{¶ 19} The express written language of Rule 12 in the Club Seat Brochure states, "Once you have purchased your COAs and the new stadium opens, you must continue to purchase season tickets for your assigned seats on an annual basis to maintain your rights. Failure to purchase season tickets will forfeit your right to the COA." Furthermore, the plain language of the authorization states, "The undersigned has read the Rules and Regulations provided with this application, understands them, and agrees to be bound by them."

{¶ 20} When the plaintiffs purchased their seat licenses, they purchased the right to purchase season tickets at a discounted rate for a specified number of years. Under the unambiguous terms of the contract, they obligated themselves to make annual payments for club-seat tickets only if they wanted to maintain ownership of their club-seat licenses. Otherwise, they would forfeit their club-seat licenses to the Bengals, who would then resell them to others.

{¶ 21} Because the contract contained clear and unambiguous language that the plaintiffs had the unilateral right to cancel their club-seat licenses by not purchasing club-seat tickets, the Bengals' argument that the "Lease Term" section obligated the plaintiffs to pay for six to ten years of club-seat tickets is without merit. We therefore overrule the Bengals' second and third assignments of error.

{¶ 22} Based on the foregoing, we sustain the Bengals' first assignment of error and overrule their second and third assignments of error. Accordingly, we affirm the trial court's disposition of the declaratory-judgment claim in the plaintiffs' favor, but reverse the trial court's judgment as to the class certification. The trial court erred as a matter of law in certifying the plaintiffs' OCSPA claim as a class action under R.C. 1345.09(B). However, with respect to the plaintiffs' remaining class-action claims, we remand this cause so that the trial court can conduct a rigorous analysis of the requirements of Civ.R. 23, as well as for a determination whether the disposition of the plaintiffs' declaratory-judgment

claim applies only to the named plaintiffs or to an entire class. But we emphasize that on remand, no further consideration shall be given to certifying a class for the OCSPA claim.

Judgment affirmed in part
and reversed in part,
and cause remanded.

PAINTER, J., concurs separately.

GORMAN, P.J., dissents.

PAINTER, Judge, concurring.

{¶ 23} I concur. But I do agree with the dissent insofar as the class certification was too broad. It should be limited to those people who bought the seat licenses and then did not wish to continue buying tickets. The people happy with the present arrangement should not be part of the class.

{¶ 24} The balance of the dissent rehashes what we have previously decided— the seat license was the contract. While the Bengals may have intended otherwise, they were bound by the language they wrote. The rules cannot be changed once the game is over.

GORMAN, Presiding Judge, dissenting.

## I. Class Certification

{¶ 25} One aspect of this case is now certain: The Supreme Court's opinion in *Marrone*, 110 Ohio St.3d 5, 2006-Ohio-2869, 850 N.E.2d 31, sounded the death knell for the Dunkelman plaintiffs' claim under the OCSPA. Just as certain, in my opinion, is that a class should not be certified for the Dunkelman plaintiffs' four remaining claims.

{¶ 26} I adhere to my dissent in *Robinson v. Johnston Coca–Cola Bottling Group, Inc.*, 153 Ohio App.3d 764, 2003-Ohio-4417, 796 N.E.2d 1, and the reasons why the trial court's order granting class certification need not include a "rigorous analysis" of the Civ.R. 23 class-action requirements as a prerequisite to appellate review. This case reinforces my point. The record is replete with evidence upon which a reviewing court can unequivocally determine that the trial court abused its discretion in granting class certification.

{¶ 27} As a prerequisite to class certification, class representatives must "fairly and adequately protect the interests of the class." See Civ.R. 23(A)(4). The putative class representatives in this case cannot fairly or adequately represent the broad class of fans, exceeding 2,200 individuals, who purchased their COAs and season tickets from the Club Seat Brochure, because none are current

season-ticket holders. The putative class representatives—all former club-seat season-ticket holders—do not wish to be bound by the six-, eight-, or ten-year lease terms they initially selected from the Club Seat Brochure. By contrast, current club-seat season-ticket holders want the terms to be binding because the terms include season-ticket price protection. This fundamental conflict between the named representatives and the putative class members is fatal to class certification of all claims in the Dunkelman plaintiffs' complaint. See *In re Kroger Co. Shareholders Litigation* (1990), 70 Ohio App.3d 52, 590 N.E.2d 391, citing *United Indep. Flight Officers, Inc. v. United Air Lines, Inc.* (C.A.7, 1985), 756 F.2d 1274; *Berman v. Narragansett Racing Assn., Inc.* (C.A.1, 1969), 414 F.2d 311.

## II. Relief Granted to Unidentified Plaintiffs

{¶ 28} It is also troubling that the majority has decided to address the declaratory-relief claim without knowing whether a class even exists. None of the putative class members certified under Civ.R. 23(B)(3) have been given notice of the action, an opportunity to enter an appearance through counsel, or an opportunity to opt out as is provided by Civ.R. 23(C)(2). While I appreciate that only the Civ.R.23 (B)(2) claim, i.e., the one for declaratory and injunctive relief, was ruled on by the trial court, resolution of this claim is central to determining the merits of the remaining claims. Addressing the merits of the Dunkelman plaintiffs' claims as the majority has done before knowing whether a class exists violates the due-process rights of the Civ.R. 23(B)(3) putative class members—if this class does indeed exist. See, generally, *Mullane v. Cent. Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865. The effect of the majority opinion is to grant relief to unidentified plaintiffs and to bind putative class members without following proper procedural safeguards.

## III. The Club Seat Brochure

{¶ 29} While I disagree with the majority's decision to address the merits of the declaratory-relief claim, I am nevertheless compelled to comment on what I view as inaccuracies in its analysis.

### A. The COA and the Lease Term are Two Different Things

{¶ 30} Permanent seat licenses are a method that several NFL franchises and government authorities have used to raise the initial capital for financing stadium construction. Typically, a permanent seat license grants the buyer ownership of a specific seat location in the stadium and a continuing right to purchase season tickets for that seat under terms agreed to by the team and the purchaser. See Reese, Nagel, and Southall, National Football League Ticket Transfer Policies: Legal and Policy Issues (2004), 14 J.Legal Aspects of Sport 163, 174–175. The

Bengals' permanent seat license at issue here, the "Charter Ownership Agreement" or "COA," offered its owner the right to buy tickets in a preferred location in one of three club-seat areas in Paul Brown Stadium, together with membership in the adjacent club-level restaurant and lounges not available to COA owners in general-admission locations.

{¶ 31} Ground had not even been broken for Paul Brown Stadium when the Bengals started selling COAs on behalf of Hamilton County, as evidenced by Paragraph 10 of the Charter Ownership Rules and Regulations: "All COA payments will be held in an escrow account until they are deposited to the account of the County of Hamilton, Ohio. All proceeds from the sale of COA will go solely to cover costs associated with constructing the new Bengals Stadium. In the event the new stadium is not constructed, the deposit amount will be returned to the original purchaser." In other words, the COA—the location and the right to purchase tickets—existed separately from the lease-term options for the purchase of season tickets listed in the Club Seat Brochure.

{¶ 32} The length of the lease-term options was set forth in the Club Seat Brochure in a section plainly entitled "Lease Terms." A COA owner had a right to lock in the cost of club-level seat tickets by checking one of three options on the order form, indicating a choice of a six-, eight-, or ten-year lease term. The six-year lease term included a one-year price freeze with a five-percent price cap for the remaining seasons. The eight-year lease term included a two-year price freeze with a four-percent price cap for the remaining seasons. The ten-year lease term included a three-year price freeze with a three-percent price cap for the remaining seasons. When the Dunkelman plaintiffs accepted one of these three lease-term options, they were under an obligation to buy season tickets for the term of years selected. In return, they received guaranteed price protection as determined by the length of the lease term they selected.

## B. Paragraph 12

{¶ 33} The majority's conclusion that Paragraph 12 of the Club Seat Brochure gave plaintiffs "the unilateral right to cancel their club-seat licenses by not purchasing club-seat tickets" ignores the obvious distinction between the COA and the lease term. It is beyond debate that the plain language of the Club Seat Brochure provided that Paragraph 12 applied only to the terms of the COA. The purpose of Paragraph 12 was to ensure that those COA owners who breached their lease-term obligation could not retain their COAs. Without this language, a COA owner could retain the COA after a breach, and the Bengals would have had no authority to sell tickets in that location. Paragraph 12 was intended to protect the Bengals' business interests. It was not the exclusive remedy for a breach of

the lease term and did not preclude the Bengals from attempting to enforce the terms of the lease.

{¶ 34} The majority maintains that Paragraph 12 allowed subscribers the opportunity for the highest savings from the Bengals, i.e., the ten-year-lease price protection, without any corresponding obligation to perform. The argument defies all considerations of mutuality and invites the question why anyone would ever choose less than a ten-year lease term with lesser price protection if the brochure so clearly allowed the purchaser a unilateral right to rescind.

{¶ 35} Three and a half seasons have now come and gone since the Dunkelman plaintiffs stopped purchasing tickets for Bengals games. Professional football in Cincinnati has moved on, and all 2006 preseason and regular-season home games have been sold out. By their own admission, the Dunkelman plaintiffs have not suffered economic damages. In fact, the Bengals offered to return their money before they filed this action. They may perceive their apparent vendetta against the Bengals as a need to satisfy some personal agenda, but their grievances serve no useful purpose for the advancement of the rule of law.

{¶ 36} I would reverse the trial court's judgment on class certification and enter judgment in favor of the Bengals on the merits of the claim for declaratory and injunctive relief.