DUNKELMAN et al., Appellees,

v.

CINCINNATI BENGALS, INC., Appellant.

[Cite as *Dunkelman v. Cincinnati Bengals, Inc.*, 178 Ohio App.3d 748, 2008-Ohio-4906.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–070628.

Decided Sept. 26, 2008.

Burg, Simpson, Eldredge, Hersh & Jardine PC, Janet G. Abaray, and Calvin S. Tregre Jr., for appellees.

Taft, Stettinius & Hollister, W. Stuart Dornette, Eric K. Combs, and Aaron M. Herzig, for appellant.

---

SUNDERMANN, Presiding Judge.

{¶ 1} This is the third appeal in a class-action lawsuit between the defendant-appellant, the Cincinnati Bengals, Inc., and plaintiffs-appellees, Edward Walton, Robert and Betty Brown, Douglas Menne, Keith Chabut, and Ronald Wellman.

{¶ 2} The Bengals' current appeal stems from the trial court's order granting plaintiffs-appellees' Civ.R. 23 motion for class certification following this court's remand in a prior appeal. After reviewing the record and analyzing the applicable law, we conclude that the trial court abused its discretion in granting the class certification. We, therefore, reverse the trial court's order and remand this case for further proceedings.

## Factual and Procedural Background

{¶ 3} The factual background of this case was set forth in the parties' second appeal before this court in *Dunkelman v. Cincinnati Bengals, Inc.* (*Dunkelman II*).[1] We incorporate those facts into this decision and restate them herein.

---

1. 170 Ohio App.3d 224, 2006-Ohio-6825, 866 N.E.2d 576.

### The Class–Action Lawsuit

{¶ 4} "Plaintiffs-appellees are the named representatives in a class-action lawsuit against the Bengals. Plaintiffs signed an order form to purchase personal seat licenses or Charter Ownership Agreements for club seats in Paul Brown Stadium, but then opted not to purchase their club-seat season tickets annually. When the Bengals contacted the plaintiffs several years later and notified them that they were in default of their obligation to pay for their club-seat tickets, the plaintiffs filed suit against the Bengals, alleging common-law claims for negligent misrepresentation and fraud, [and] statutory violations of the Ohio Consumer Sales Practices Act, and requesting declaratory and injunctive relief. Plaintiffs also filed a motion for a preliminary injunction to prohibit the Bengals from communicating with previous club-seat holders to collect monies for club-seat season tickets until the merits of the case had been adjudicated.[2]

{¶ 5} "The Bengals moved to stay the class-action suit, arguing that the plaintiffs were bound by the arbitration provision in a subsequent document entitled the Club Seat License Agreement ("CSLA"). The trial court granted the Bengals' motion for a stay pending arbitration and stayed the plaintiffs' motion for a preliminary injunction pending the outcome of the arbitration."[3]

### Dunkelman I

{¶ 6} "The plaintiffs appealed the trial court's decision. On appeal, they argued that the trial court had erred in granting the Bengals' motion to stay the proceedings. They maintained that the contract between the Bengals and the plaintiffs was formed when they signed brochures for club-seat licenses and submitted their initial payments. The Bengals argued, among other things, that the CSLA was valid because the plaintiffs' payments toward their season tickets served as separate consideration for the terms contained therein.[4]

{¶ 7} "In holding that the Club Seat Brochure and Order Form was the controlling agreement between the parties, we rejected the Bengals' argument that the plaintiffs' payments following their receipt of the CSLA constituted consideration for the terms outlined in the CSLA. As a result, we held that the arbitration provision in the CSLA was unenforceable because it appeared only in the terms of the CSLA, which the plaintiffs had not agreed to, and which did not constitute a contract between the parties. We further stated that because the plaintiffs had never agreed to the terms of the CSLA, they never agreed to the

---

2. Id. at ¶ 2.

3. Id. at ¶ 3.

4. Id. at ¶ 4.

default and acceleration provisions that also appeared in that document. Thus, we held that the trial court had erred in granting the Bengals' motion to stay the proceedings pending arbitration. Consequently, we remanded the case to the trial court with instructions to lift the stay pending arbitration, to proceed with the case, and to rule on the plaintiffs' motion for a preliminary injunction."[5]

## Trial Court Proceedings Following Dunkelman I

{¶ 8} "Following our remand in Dunkelman I, the parties joined in an agreed entry regarding the preliminary injunction. Plaintiffs then filed an amended complaint, which removed Dunkelman, now deceased, as a named class representative and added Menne, Chabut, and Wellman as additional class representatives. Also added were two new claims: one for a violation of the Deceptive Trade Act and one for fraudulent inducement.[6]

{¶ 9} "Plaintiffs also moved for class certification on behalf of all club-seat license holders who had purchased their tickets with the original Club Seat Brochure, but had then decided to stop purchasing tickets. The Bengals filed an answer to the amended complaint and compulsory counterclaims against Brown, Walton, and Wellman. Plaintiffs moved for dismissal of the Bengals' counterclaims and for summary judgment on their claims for declaratory and injunctive relief. The plaintiffs sought a declaration that the only binding terms between the parties were found in the rules and regulations of the Club Seat Brochure and that those terms provided that the plaintiffs and the class could discontinue purchasing club-seat season tickets, with the only penalty being forfeiture of their seat license and their payment of $150 per seat, and that the Bengals could not rightfully demand payment for six to ten years of season tickets.[7]

{¶ 10} "The Bengals filed a cross-motion for summary judgment on their counterclaims. They argued that under the Club Seat Brochure, plaintiffs Brown, Walton, and Wellman had signed up for a lease of six, eight, or ten years and thus were obligated to purchase club-seat tickets for the term of years they had chosen. The trial court permitted the parties to engage in limited discovery with respect to the class-certification issues. Following discovery, the plaintiffs sought to certify a broader class consisting of all persons or entities who had purchased club-seat licenses through the Club Seat Brochure.[8]

---

5. Id. at ¶ 5.

6. Id. at ¶ 6.

7. Id. at ¶ 7.

8. Id. at ¶ 8.

{¶ 11} "After a one-hour hearing on the motions, the trial court granted the plaintiffs' motions for class certification on all their claims. The trial court's order certified a class of 'all persons or entities who purchased club seat Charter Ownership Agreements ('COA') through the original Club Seat Brochure and/or Club Order Form for Bengals football games in Paul Brown Stadium.' The trial court also certified a subclass consisting of 'all persons or entities who purchased club seat COAs through the original Club Seat Brochure and/or Club Seat Order Form for Bengals football games in Paul Brown Stadium, who then discontinued or attempted to discontinue purchasing club seat season tickets.' The trial court's order additionally stated that the court was certifying the class under all three subsections of Civ.R.23(B).[9]

{¶ 12} "In the same order, the trial court granted the plaintiffs' motion for summary judgment and dismissed the Bengals' counterclaims. The trial court held that 'under the terms of the contract, class members are under no obligation to purchase club seat tickets for 6, 8, or 10 years and may discontinue the purchase of club seat tickets at any time with the only penalty being the forfeiture of the club seat COA and the $150 per club seat COA purchased.' The trial court used the same holding to dismiss the Bengals' counterclaims. The trial court, finding no just reason for delay, certified the judgment pursuant to Civ.R. 54(B)."[10] (Footnotes added in part and deleted in part.)

## Dunkelman II

{¶ 13} The Bengals appealed. This court affirmed (1) the trial court's entry of summary judgment for the plaintiffs on their declaratory-judgment claim and (2) the trial court's dismissal of the Bengals' counterclaims.[11] We held that the club-seat order form contained the material terms of the contract between the Bengals and a club-seat patron.[12]

{¶ 14} With respect to the trial court's order certifying the class, this court held that because the trial court's entry certifying the class was devoid of the detailed analysis under Civ.R. 23 required by the Ohio Supreme Court, we could not "properly review the trial court's entry granting class certification with respect to the plaintiffs' remaining claims under an abuse-of-discretion standard."[13] Thus, we remanded the case "so that the trial court c[ould] conduct a

---

9. Id. at ¶ 9.

10. Id. at ¶ 10.

11. Id. at ¶ 16–22.

12. Id.

13. Id. at ¶ 15.

rigorous analysis of the requirements of Civ.R.23." [14]

## Trial Court Proceedings Following Dunkelman II

{¶ 15} Following our remand in *Dunkelman II*, the trial court issued a new, more detailed order certifying the same class that it had certified before. The class consisted of "all persons or entities who purchased club seat licenses and/or club seat season tickets through the original Club Seat Brochure and/or Club Seat Order Form for Bengals football games in Paul Brown Stadium." The trial court again certified the case as a class action on all the plaintiffs' claims, with all the plaintiffs serving as class representatives on all the claims. The trial court's order further provided that the court was certifying the class under all three subsections of Civ.R.23(B).

## Class Certification

{¶ 16} In this appeal, the Bengals argue in a single assignment of error that the trial court erred in granting the plaintiffs' motion for class certification.

{¶ 17} The Ohio Supreme Court has held that "[a] trial judge has broad discretion in determining whether a class action may be maintained and that determination will not be disturbed absent a showing of an abuse of discretion * * *. However, the trial court's discretion in deciding whether to certify a class action is not unlimited, and indeed is bounded by and must be exercised within the framework of Civ.R. 23. The trial court is required to carefully apply the class action requirements and conduct a rigorous analysis into whether the prerequisites of Civ.R. 23 have been satisfied." [15]

{¶ 18} A trial court may not certify a class action under Civ.R. 23 unless seven requirements are met: (1) an identifiable and unambiguously defined class exists, (2) the named representatives are members of the class, (3) the class is so numerous that joinder of all members is impracticable, (4) there are questions of law or fact common to the class, (5) the claims or defenses of the representative parties are typical of the claims or defenses of the class, (6) the representative parties may fairly and adequately protect class interests, and (7) one of the three Civ.R.23(B) requirements is satisfied.[16]

{¶ 19} "The party seeking to maintain a class action has the burden of demonstrating that all factual and legal prerequisites to class certification have

---

14. Id. at ¶ 22.

15. *Hamilton v. Ohio Sav. Bank* (1998), 82 Ohio St.3d 67, 69, 694 N.E.2d 442.

16. Id. at 79, 694 N.E.2d 442.

been met.[17] A class action may be certified only if the court finds, after a rigorous analysis, that the moving party has satisfied all [seven] requirements of Civ.R. 23."[18]

## The Certified Class Is Overly Broad

{¶ 20} The Bengals argue that the trial court's definition of the class is overly broad because (1) this court has already ruled on the merits of the plaintiffs' declaratory-judgment claim in *Dunkelman II*, (2) the plaintiffs' remaining statutory and tort claims are all based upon the plaintiffs' receipt of letters in March and April 2004 from the Bengals, and (3) these letters were sent only to class members who opted not to continue purchasing club-seat tickets. We agree.

{¶ 21} The class as currently defined includes COA holders who never received letters from the Bengals; former COA holders who opted not to continue to purchase club-seat tickets and who were specifically excused from their obligations by the Bengals; COA holders who selected six- or eight-year COA terms, whose COAs expired following the 2005 season or the 2007 season; and over 2,200 club-seat season-ticket purchasers currently buying Bengals club-seat season tickets, including 11 who filed affidavits affirming that they had no desire to be in litigation with the Bengals. All of these people are included in the class, but none of them have a representative among the plaintiffs. The class should have instead been limited to those persons or entities who purchased club-seat licenses and/or club-seat season tickets through the original Club Seat Brochure or the Club Seat Order Form for Bengals football games in Paul Brown Stadium, and who did not wish to continue purchasing tickets, but who received the March and April 2004 letters from the Bengals.

{¶ 22} Finally, we note that this court in *Dunkelman II* expressly stated that "on remand, no further consideration sh[ould] be given to certifying a class [on] the OCSPA claim." Yet following our remand, the trial court again certified a class for this claim. We agree with the Bengals that the trial court abused its discretion in certifying a class for the OCSPA claim, given that this court's analysis specifically rejected this class claim in *Dunkelman II*. Based upon the foregoing, we sustain the Bengals' sole assignment of error, reverse the trial

---

17. *Hoang v. E*Trade Group, Inc.*, 151 Ohio App.3d 363, 2003-Ohio-301, 784 N.E.2d 151, ¶ 14, citing *Gannon v. Cleveland* (1984), 13 Ohio App.3d 334, 335, 13 OBR 412, 469 N.E.2d 1045.

18. Id., citing *Hamilton*, supra, 82 Ohio St.3d at 70, 694 N.E.2d 442.

court's judgment, and remand this case for further proceedings consistent with this decision and the law.

Judgment reversed
and cause remanded.

HILDEBRANDT, P.J., concurs.

CUNNINGHAM, J., concurs in part and dissents in part.

CUNNINGHAM, Judge, concurring in part and dissenting in part.

{¶ 23} I join the majority's holding that the trial court erred in certifying a class to pursue the plaintiffs' OCSPA claim and that it erred in certifying an overly broad class.

{¶ 24} But I respectfully dissent from the remedy it advances in paragraph 21: the formation of a smaller class of those who purchased club-seat licenses or tickets and who did not wish to continue purchasing tickets. Even this class must ultimately fail because the named plaintiffs in this case lack typicality with the purported class members. I would reverse the trial court's class-certification determination in its entirety and remand the case to the trial court for proceedings on the remaining individual claims only.

{¶ 25} Among the requirements for class certification identified in Civ.R. 23 are that "the claims or defenses of the representative parties are typical of the claims or defenses of the class" and that "the representative parties will fairly and adequately protect the interests of the class."

{¶ 26} These twin requirements of typicality and adequacy of representation are fundamental to the prosecution of a class-action claim. "[E]ven named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.' "[19] At a minimum, class representatives must be class members.[20]

{¶ 27} Here, the named plaintiffs, under the class as constituted, or as suggested by the majority, lack typicality with the class members. By their own admission, the named plaintiffs have no economic damages because they did not purchase tickets after receipt of the March and April 2004 letters. They did

---

**19.** *Simon v. E. Ky. Welfare Rights Org.* (1976), 426 U.S. 26, 40, 96 S.Ct. 1917, 48 L.Ed.2d 450, fn. 20, quoting *Warth v. Seldin* (1975), 422 U.S. 490, 502, 95 S.Ct. 2197, 45 L.Ed.2d 343; see also *Woods v. Oak Hill Community Med. Ctr.* (1999), 134 Ohio App.3d 261, 269, 730 N.E.2d 1037.

**20.** See *Warner v. Waste Mgt., Inc.* (1988), 36 Ohio St.3d 91, 96, 521 N.E.2d 1091.

nothing in reliance on the letters and did not incur any pecuniary loss. Thus, even under the majority's narrower class formulation, the named plaintiffs have no claims for fraudulent inducement or negligent misrepresentation—the principal remaining claims for damages.

{¶ 28} Because they do not share the injuries asserted by the purported class members, the named plaintiffs lack the ability to adequately protect the interests of those who actually purchased club-seat tickets.[21] Yet the majority suggests that this class action proceed with named plaintiffs who are former ticketholders with no stake in the outcome of the claims for damages among the class members.

{¶ 29} Finally, the remaining emotional-distress claims of the class members should be disposed of in individual civil actions. The "damages provable by each putative class member will vary widely [and] * * * will be highly individualized" and thus are not amenable to resolution by class action.[22]

{¶ 30} This is the third appeal from class-certification orders in this lawsuit. The legal and factual issues have been fully explored. I would sustain the assignment of error in its entirety, decertify the class, and remand for further proceedings on the individual claims.

---

21. See Civ.R. 23(A)(4).

22. *Petty v. Wal-Mart Stores, Inc.* (2002), 148 Ohio App.3d 348, 356, 773 N.E.2d 576.