COWIT et al., Appellees and Cross-Appellants,

v.

CELLCO PARTNERSHIP, d.b.a. Verizon Wireless, Appellant and Cross-Appellee.

[Cite as *Cowit v. Cellco Partnership*, 181 Ohio App.3d 809, 2009-Ohio-1596.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–080627 and C–080677.

Decided April 3, 2009.

Statman, Harris & Eyrich, L.L.C., Jeffrey P. Harris, Alan J. Statman, Colleen M. Hegge, and W. Kelly Lundrigan; and Strauss & Troy, Richard S. Wayne, Thomas P. Glass, Lori A. Ross, and Nicole M. Lundrigan, for appellees and cross-appellants.

Thompson Hine L.L.P., Earle Jay Maiman, and Bryce A. Lenox; and Munger, Tolles & Olson L.L.P., Richard E. Drooyan, and Jonathan H. Blavin, for appellant and cross-appellee.

HENDON, Presiding Judge.

{¶ 1} Defendant-appellant and cross-appellee Cellco Partnership, d.b.a. Verizon Wireless ("Verizon"), and plaintiffs-appellees and cross-appellants Craig Cowit, Daniel Statman, Barry Koblenz, and Joseph Gramada ("plaintiffs") appeal from the trial court's ruling on plaintiffs' motion for class certification.

{¶ 2} Plaintiffs, customers of Verizon, had requested certification of two distinct classes in their litigation against Verizon. Each class sought to bring separate claims regarding Verizon's allegedly deceptive and fraudulent acts. The trial court certified a "no roaming service class" and denied certification of a "roaming overcharge class." Specifically, Verizon appeals from the trial court's

certification of the "no roaming service class," and plaintiffs appeal from the trial court's denial of class certification with respect to the "roaming overcharge class."

{¶ 3} We find no error in the trial court's rulings regarding class certification, and we, accordingly, affirm.

### Roaming Overcharge Class

{¶ 4} Plaintiffs requested certification of a "roaming overcharge class," which consisted of "all wireless customers of Verizon under all America's Choice Plans, from inception of the America's Choice Plans to the present, who were charged and paid roaming fees." Plaintiffs sought nationwide class certification for a breach-of-contract claim, and they further sought to certify two subclasses. One subclass consisted of all plaintiffs residing in Ohio and claiming conversion, negligent misrepresentation, fraud, unjust enrichment, and promissory estoppel. The second subclass included all plaintiffs residing in states that had adopted the Uniform Deceptive Trade Practices Act and seeking relief under that act.

{¶ 5} To support their motion for class certification, plaintiffs alleged that when they had subscribed to Verizon's services, they were promised that roaming charges would be assessed only for calls placed or received outside the customer's home area. The home area consisted of a specific geographic area that had been conveyed to the customers through maps created by Verizon. According to the plaintiffs, Verizon had promised not to charge roaming fees for calls placed or received while the customer was inside a home area.

{¶ 6} The plaintiffs asserted that Verizon had improperly assessed roaming charges for calls placed or received while the customer was within a home area, because Verizon had been unable to determine the location of a customer at the time that a call was made. According to plaintiffs, Verizon's conduct constituted a breach of contract because, by promising to assess roaming fees only for calls made or received outside the home area, Verizon had implicitly promised that it was able to determine the location of a customer when a call was placed. But because Verizon was unable to make such a determination, all roaming charges assessed were wrongful.

{¶ 7} The trial court declined to grant class certification for this "roaming overcharge class." It determined that although the proposed class was identifiable, it was overly broad and included numerous persons who had suffered no injury. The court further concluded that individual issues predominated over common issues, because the court would have to make an initial determination as to which customers had been wrongfully charged roaming fees.

### No Roaming Service Class

{¶ 8} Plaintiffs additionally sought certification of a "no roaming service class." This class included "[a]ll wireless customers of Verizon under the post-February 2005 version of the America's Choice Plans, to whom Verizon failed to provide roaming service." Plaintiffs sought nationwide certification for a breach-of-contract claim, as well as certification of two subclasses identical to those proposed for the "roaming overcharge class."

{¶ 9} In support of their request for class certification, plaintiffs alleged that Verizon had marketed its America's Choice Plans as providing the benefit of roaming service without customers incurring roaming charges. But according to plaintiffs, Verizon had provided no roaming service, and instead of receiving free roaming, plaintiffs had experienced dropped calls when they entered into areas with no coverage. Plaintiffs specifically asserted that they had been injured because all Verizon customers had paid an additional price to receive roaming services free of charge, but had never received that service.

{¶ 10} The trial court certified plaintiffs' "no roaming service class." The court determined that because all customers had paid for a service that they did not receive, common issues predominated in this class. The court certified a nation-wide class on plaintiffs' breach-of-contract claim and certified an Ohio subclass for all remaining claims, including plaintiffs' claim under the Deceptive Trade Practices Act.

### Requirements for Class Certification

{¶ 11} Before a trial court may grant class certification, certain standards must be met. First, the trial court must find the existence of an identifiable and unambiguous class.[1] The trial court must also find that the named class representatives are members of that class.[2]

{¶ 12} The court must then find that the four prerequisites contained in Civ.R. 23(A) have been met. Civ.R. 23(A) provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."[3]

---

1. See *Petty v. Wal–Mart Stores, Inc.* (2002), 148 Ohio App.3d 348, 352, 773 N.E.2d 576, citing *Warner v. Waste Mgt., Inc.* (1988), 36 Ohio St.3d 91, 96, 521 N.E.2d 1091.

2. Id.

3. Civ.R. 23(A).

{¶ 13} Finally, the court must determine that one of three requirements provided for in Civ.R. 23(B) has been met. In this case, plaintiffs sought class certification under Civ.R. 23(B)(3), which provides that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

{¶ 14} When determining whether class certification is appropriate, a trial court must "carefully apply the class action requirements and conduct a rigorous analysis into whether the prerequisites of Civ.R. 23 have been satisfied."[4]

{¶ 15} A trial court's ruling on a motion for class certification is reviewed for an abuse of discretion.[5] An abuse of discretion "connotes more than an error of law or of judgment; it implies an unreasonable, arbitrary or unconscionable attitude on the part of the court."[6]

{¶ 16} We first consider Verizon's appeal and then analyze the merits of the plaintiffs' cross-appeal.

### Verizon's Appeal

{¶ 17} Verizon argues in its sole assignment of error that the trial court erred in certifying the plaintiffs' "no roaming service class." Verizon first argues that certification was altogether inappropriate. But it further argues in the alternative that should this court uphold the class certification, the breach-of-contract claim should not have been granted nationwide certification because of differences in the law regarding breach of contract among the states.

### A. Class Certification was Proper

{¶ 18} Verizon does not contest the trial court's findings regarding the prerequisites contained in Civ.R. 23(A). Rather, Verizon argues that class certification was inappropriate under Civ.R. 23(B) because individual issues predominate over common issues of law and fact.

{¶ 19} Specifically, Verizon argues that the proposed class contains numerous plaintiffs who suffered no injury at all. Under Verizon's theory, only those plaintiffs who had attempted to place a call in an area without service and had experienced a dropped call, as opposed to receiving free roaming service, were

---

4. *Dunkelman v. Cincinnati Bengals,* 170 Ohio App.3d 224, 2006-Ohio-6825, 866 N.E.2d 576, ¶ 14, quoting *Hamilton v. Ohio Savs. Bank* (1998), 82 Ohio St.3d 67, 70, 694 N.E.2d 442.

5. See *Cope v. Metro. Life Ins. Co.* (1998), 82 Ohio St.3d 426, 429, 696 N.E.2d 1001.

6. *Pembaur v. Leis* (1982), 1 Ohio St.3d 89, 91, 1 OBR 125, 437 N.E.2d 1199.

injured. According to Verizon, the trial court would have to conduct an individualized inquiry for each plaintiff to determine whether an injury had occurred.

{¶ 20} Verizon mischaracterizes the injury alleged by the plaintiffs. The plaintiffs were not arguing that they had been injured by experiencing a dropped call. Rather, the injury asserted by plaintiffs was the monthly fee that they believed they had paid to receive free roaming service, a service that was never actually provided.

{¶ 21} As we have stated, Civ.R. 23(B) provides that common questions of law or fact must predominate over questions affecting individual class members. "[I]t is not sufficient that common questions merely exist; rather, the common questions must represent a significant aspect of the case and they must be able to be resolved for all members of the class in a single adjudication." [7]

{¶ 22} Verizon cites *Hoang v. E\*Trade Group, Inc.*[8] and *Linn v. Roto–Rooter, Inc.*[9] in support of its position. In *Hoang*, plaintiff Hoang was an account holder with E\*Trade, a company that provided various online services regarding securities.[10] On several dates, Hoang had been unable to access her account due to interruptions on E\*Trade's system. Hoang alleged that E\*Trade had contracted to provide a continuous and reliable trading service and that it had failed to do so during the system interruptions. Hoang had sought certification of a class that included customers of E\*Trade who had existing trading accounts with E\*Trade on dates when the company's system had experienced interruptions and E\*Trade accounts had been inaccessible.[11]

{¶ 23} The Eighth Appellate District reversed the trial court's class certification. It determined that individual injuries predominated over common injuries.[12] Specifically, the court stated that "[a]lthough all of the plaintiffs' claims arise out of the same Customer Agreement and a 'common course of conduct,' the trial court ignores the fact that liability as to each individual plaintiff's claims cannot be established in a single adjudication. Each of the plaintiff's claims requires proof of actual injury caused by the alleged wrongdoing." [13]

---

7. *Hoang v. E\*Trade Group, Inc.*, 151 Ohio App.3d 363, 2003-Ohio-301, 784 N.E.2d 151, ¶ 16, quoting *Schmidt v. Avco Corp.* (1984), 15 Ohio St.3d 310, 313, 15 OBR 439, 473 N.E.2d 822.

8. Id.

9. 8th Dist. No. 82657, 2004-Ohio-2559, 2004 WL 1119619.

10. *Hoang,* 151 Ohio App.3d 363, 784 N.E.2d 151, ¶ 2–3.

11. Id. at ¶ 8.

12. Id. at ¶ 19.

13. Id.

{¶ 24} *Linn v. Roto–Rooter* focused on Roto–Rooter's practice of including a "miscellaneous supplies charge" on all of its customer invoices, regardless of whether a particular customer had received any of the so-called miscellaneous supplies.[14] Linn, a Roto–Rooter customer, sought certification of a class of all persons who had been charged the miscellaneous-supplies charge by Roto–Rooter during a particular time period.[15] The Eighth Appellate District again reversed the trial court's class certification because common questions of fact did not predominate.[16] The court stated that "Roto–Rooter's liability hinges on whether a customer actually received little or no miscellaneous supplies to establish that the charge was unjust or fraudulent."[17]

{¶ 25} Unlike the proposed classes in *Hoang* and *Linn,* in this case the plaintiffs' claims do not depend largely on individualized proof. In *Hoang,* not all customers had attempted to utilize their E*Trade accounts while the system was down. And in *Linn,* not all plaintiffs had been wrongfully charged for miscellaneous supplies because certain plaintiffs had actually received those supplies from Roto–Rooter. But in this case, each plaintiff had entered into a contract with Verizon with the belief that Verizon had contractually promised to provide free roaming service. And each plaintiff had paid a similar monthly fee as part of the overall contractual rate to receive that service.

{¶ 26} Plaintiffs' asserted injury is Verizon's failure to provide a contractually obligated service, and all plaintiffs can prove their injury in a similar manner. Verizon's liability does not hinge on individual proof, as it did in *Hoang* and *Linn.* We note that Verizon's liability will be determined based on what the company was contractually obligated to provide, not, as Verizon posits, whether individual plaintiffs had experienced a dropped call when they believed that they were entitled to free roaming service.

{¶ 27} As *Linn* noted, "when evidence of a defendant's deceitful or fraudulent conduct is set forth in a standardized contract distributed to many and resulting in class-wide injury, then such a case is ideal for class certification."[18] This case contains such a scenario.

---

14. *Linn,* 2004-Ohio-2559, 2004 WL 1119619, at ¶ 2.

15. Id. at ¶ 6.

16. Id. at ¶ 13.

17. Id. at ¶ 16.

18. Id. at ¶ 19.

{¶ 28} The common question of fact that predominates in this appeal is whether Verizon had contractually promised to provide free roaming service to plaintiffs. This question may be resolved in a single adjudication for all.

{¶ 29} We determine that the trial court did not abuse its discretion in certifying plaintiffs' "no roaming service class" under Civ.R. 23(B).

### B. Nationwide Certification

{¶ 30} Verizon further argues that the trial court should not have granted nationwide certification on plaintiffs' breach-of-contract claim because of irreconcilable differences in breach-of-contract law among the states.

{¶ 31} Verizon specifically argues that the law on breach of contract differs among the states in the following respects: whether materiality is an element in a breach-of-contract claim and the specific definition of materiality; whether a plaintiff's performance is an element in a breach-of-contract claim; whether extrinsic evidence is admissible to determine whether a contract is ambiguous; and when the doctrine of contra proferentem is applicable.

{¶ 32} Both parties presented extensive evidence to the trial court regarding the propriety of nationwide certification of a breach-of-contract claim. After reviewing this evidence, the trial court determined that differences in state law did not prevent nationwide certification.

{¶ 33} The law is clear that "[a]lthough the involvement of more than one state's law does not make a class action per se unmanageable, any variances among state laws must be examined to determine whether common questions will predominate over individual issues and whether litigation of a nationwide class may be managed fairly and efficiently." [19]

{¶ 34} The trial court in this case conducted the requisite analysis. To be certain, differences do exist in state law on the various contractual issues raised by Verizon, and the trial court will have to create subclasses to appropriately handle these legal variances. But the trial court determined that it could efficiently manage these differences in the law. The trial court would have been equally justified in reaching the opposite conclusion, and, in fact, many courts have concluded otherwise. But given "the trial court's special expertise and familiarity with case-management problems and its inherent power to manage its own docket," [20] we cannot conclude that the trial court abused its discretion in certifying a nationwide class on plaintiffs' breach-of-contract claim.

---

19. *Washington Mut. Bank v. Superior Court* (2001), 24 Cal.4th 906, 922, 103 Cal. Rptr.2d 320, 15 P.3d 1071.

20. *Hamilton v. Ohio Savs. Bank*, 82 Ohio St.3d at 70, 694 N.E.2d 442.

{¶ 35} We conclude that the trial court did not err in granting certification to plaintiffs' "no roaming service class" or in certifying a nationwide class on the breach-of-contract claim, and Verizon's assignment of error is overruled.

### Plaintiffs' Cross–Appeal

{¶ 36} In their cross-appeal, plaintiffs argue in one assignment of error that the trial court erred in refusing to certify a nationwide "roaming overcharge class" on their breach-of-contract claim and an Ohio subclass for their remaining claims.

{¶ 37} As we have stated, in the "roaming overcharge class," plaintiffs sought to represent all Verizon customers who had been charged and had paid roaming fees. According to plaintiffs, all roaming fees assessed by Verizon were wrongful, whether they were for calls placed or received inside or outside the designated home area, because Verizon had breached its implicit contractual obligation to be able to determine the location of a customer at the time a call was placed or received.

{¶ 38} With respect to this class, plaintiffs specifically asserted that they had been injured "(i) [when] they were charged and paid roaming fees for calls which Verizon admittedly could not determine the location of the customers within a hundred miles, (ii) [when] Verizon failed to provide and maintain a billing system capable of charging customers in accordance with the terms of the Plan, and (iii) [when] they were charged and paid roaming fees for which Verizon had no contractual basis to impose under the terms of the contract."

{¶ 39} The trial court refused to certify the class after determining that individual issues predominated over common issues, and that the class was overly broad and contained members who had suffered no injury. On appeal, plaintiffs argue that the trial court erred in determining that the predominance requirement had not been satisfied. They further argue that the trial court disregarded their theory of this claim and had made an improper determination concerning the merits of their claim to the effect that customers who had not incurred roaming fees while inside a home area were not injured.

{¶ 40} We first discuss the trial court's conclusion that common issues do not predominate in this class. Plaintiffs' allegations with respect to the "roaming overcharge class" are similar to the allegations of the plaintiff in *Hoang v. E*Trade Group, Inc.*, which we have previously discussed in detail. As we have stated, Hoang had sought certification of a class of E*Trade account holders following interruptions to E*Trade's online trading system. Hoang had alleged that E*Trade had contractually promised to provide "continuous and/or reliable

trading services" and had committed a breach of contract by allowing the system interruptions.[21]

{¶ 41} Despite Hoang's assertion that the overall injury was the breach of a contractual promise, the Eighth Appellate District determined that class certification was not appropriate because "although all of the plaintiffs' claims [arose] out of the same Customer Agreement and a 'common course of conduct,' * * * liability as to each individual plaintiff's claims [could not] be established in a single adjudication."[22] The court noted that while some plaintiffs may have been damaged by the inability to access their accounts, other plaintiffs might have benefitted from the system interruptions. In response to the plaintiffs' claims that they had been injured by the inability to access their accounts, the Eighth Appellate District stated that "the law does not provide recovery for inchoate claims," and that "simple loss of services without economic loss does not create a compensable claim."[23]

{¶ 42} Just as in *Hoang*, here, not all plaintiffs in the instant case have suffered an economic loss. Plaintiffs who were improperly assessed roaming fees for calls placed or received while in a home area certainly suffered an economic loss. But those plaintiffs who were assessed roaming fees for calls placed or received while outside a home area were properly charged fees and suffered no economic loss. And because, through no fault of plaintiffs, the location of a plaintiff at the time that a roaming fee was assessed cannot be determined at the outset, the proposed class includes plaintiffs with an inchoate claim.

{¶ 43} Just as liability in *Hoang* could not be determined absent an individual analysis of each customer's online trading history, Verizon's liability in this case cannot be determined absent individual testimony from each plaintiff concerning his or her location at the time that roaming fees were assessed.

{¶ 44} Moreover, not only did numerous members of plaintiffs' proposed class not suffer an economic injury, but the damages that were suffered vary across the board. Each plaintiff's damages would depend on the amount of roaming fees that were assessed for calls made or received in a home area, which, again, could not be established absent individual testimony. Whereas the proposed "no roaming service class" involved equal damages for each plaintiff based on the monthly service fee that had been paid to receive free roaming, the damages for the "roaming overcharge class" could not be determined so simply.

---

21. *Hoang*, 151 Ohio App.3d 363, 2003-Ohio-301, 784 N.E.2d 151, at ¶ 6.

22. Id. at ¶ 19.

23. Id. at ¶ 27.

{¶ 45} Our reasoning is supported by the Ohio Supreme Court's statement in *Hamilton v. Ohio Sav. Bank* that "[w]e have specifically held, in accordance with the overwhelming weight of authority, that 'a trial court should not dispose of a class certification solely on the basis of disparate damages.' This is not to say that certification may never be denied on the basis of individual damage issues. Some courts have denied certification where the calculation of damages is particularly complex or burdensome." [24] The instant case involves the type of burdensome analysis recognized by the Ohio Supreme Court.

{¶ 46} Based on the foregoing considerations, we conclude that the trial court did not abuse its discretion in determining that individual issues predominate in plaintiffs' proposed class.

{¶ 47} We now briefly address plaintiffs' contention that the trial court made an inappropriate determination regarding the merits of their claim because it failed to accept their allegation that all roaming fees assessed had been wrongful. While plaintiffs are correct in their assertion that a trial court may not consider the merits of the underlying claim when determining whether a class should be certified,[25] we do not agree with plaintiffs' contention that the trial court in this case actually made a merit-based determination. Although a trial court may not consider the merits of a claim, "it may, and must, examine the nature of the underlying claims for the purpose of determining whether common questions predominate." [26]

{¶ 48} In this case, the trial court did not make a determination on the merits of plaintiffs' case. The trial court was entitled to, and correctly did, consider the underlying claims and the injury suffered by plaintiffs to determine whether common issues predominated. And we believe that the trial court was able to make such a determination, even accepting as true plaintiffs' assertion that all charges were wrongful. Even if the charges were wrongful, not all plaintiffs had suffered an economic loss. This determination was entirely appropriate and did not result in an improper merit-based conclusion.

{¶ 49} We hold that the trial court did not abuse its discretion in denying class certification for the "roaming overcharge class" because plaintiffs had failed to satisfy the requirements of Civ.R. 23(B)(3).

{¶ 50} The assignment of error is overruled.

---

24. *Hamilton*, 82 Ohio St.3d at 81, 694 N.E.2d 442, quoting *Ojalvo v. Ohio State Univ. Bd. of Trustees*, 12 Ohio St.3d 230, 232, 12 OBR 313, 466 N.E.2d 875.

25. *Begala v. PNC Bank* (Dec. 30, 1999), 1st Dist. No. C–990033, 1999 WL 1264187.

26. *Petty*, 148 Ohio App.3d at 355, 773 N.E.2d 576.

### Conclusion

{¶ 51} In summary, because common questions of fact predominate in the "no roaming service class," and because plaintiffs' claims do not rely on individual proof, but rather may be proved in a similar manner and in a single adjudication, the trial court properly granted certification for this proposed class. And given the trial court's inherent power to control its own docket, the court did not abuse its discretion in granting nationwide certification for the breach-of-contract claim brought by this class.

{¶ 52} But because many members of the proposed "roaming overcharge class" suffered an inchoate injury, and because damages for this proposed class would vary widely, the trial court did not abuse its discretion in denying certification for this class.

{¶ 53} Both Verizon's appeal and plaintiffs' cross-appeal have no merit, and the judgment of the trial court is accordingly affirmed.

Judgment affirmed.

SUNDERMANN and CUNNINGHAM, JJ., concur.